[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-15575

_____

D. C. Docket No. 91-00986-CV-ASG

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11, 2003
THOMAS K. KAHN
CLERK

ALLAPATTAH SERVICES, INCORPORATED,
a Florida corporation,
ROBERT LEWIS, INC., a Florida corporation,
d.b.a. Trial Exxon, G.G.S.K.1, Inc., a Florida
corporation,
d.b.a. North Stuart Exxon, G.G.S.K., Inc., et al.,

Plaintiffs-Appellees,
Cross-Appellants,

ROY PAGE,
GLEBE ROAD EXXON, INCORPORATED,

Plaintiffs,

versus

EXXON CORPORATION,
a New Jersey corporation,

Defendant-Appellant,
Cross-Appellee.

_____

No. 01-16244

_____

D. C. Docket No. 91-00986-CV-ASG

ALLAPATTAH SERVICES, INCORPORATED,
a Florida corporation,
ROBERT LEWIS, INC., a Florida
corporation, d.b.a. Northlake Exxon,
d.b.a. Trial Exxon, G.G.S.K.1, Inc.,
a Florida corporation, d.b.a. North
Stuart Exxon, G.G.S.K., Inc., et al.,

Plaintiffs-Appellees,

ROY PAGE, et al.,

Plaintiffs,

versus

EXXON CORPORATION,
a New Jersey corporation,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(June 11, 2003)**

Before WILSON and FAY, Circuit Judges, and GOLDBERG*, Judge.

_____

*Honorable Richard W. Goldberg, Judge, U.S. Court of International Trade, sitting by designation.

WILSON, Circuit Judge:

This case arises out of a class action suit filed by approximately 10,000 Exxon dealers who alleged that Exxon Corp. breached its dealer agreements by overcharging them for fuel purchases. Following a second trial, a jury returned a special verdict in favor of the dealers. After entering a final judgment for the class representatives and denying the dealers' motion for the entry of a class-wide judgment, the district court certified the following two questions for interlocutory appeal: (1) whether it properly exercised supplemental jurisdiction over class members whose claims did not meet the jurisdictional minimum amount in controversy requirement; and (2) whether an aggregate compensatory and prejudgment interest award could be entered for the class before the claims administration process. Additionally, the court urged us to consider all of the legal issues raised by both parties relating to the disposition of the case. Thus, we also consider (1) whether Exxon is entitled to participate in the claims administration process; (2) whether Exxon may assert set-off claims against the dealers; (3) whether the district court abused its discretion by certifying the class; (4) whether the court erred when it admitted extrinsic evidence to supplement the Dealer Sales Agreements (dealer agreements); (5) whether the dealers' claims were barred by the statutes of limitations; and (6) whether the court abused its discretion by

allowing the dealers' expert witness to testify at trial. We find no reversible error and accordingly affirm.

## BACKGROUND[1]

This suit was filed by a class of approximately 10,000 current and former Exxon dealers in thirty-five states who alleged that in connection with a marketing program known as the Discount for Cash (DFC) program, Exxon systematically and intentionally overcharged them for the wholesale purchase of motor fuel between March 1, 1983 and August 31, 1994. As a result of the overcharges, the dealers alleged that Exxon breached its obligations to them under the dealer agreements.

Under the DFC program, Exxon encouraged its dealers to implement a pricing system under which retail customers who paid cash for gasoline would pay a few cents less than customers who paid with credit cards. In an effort to maximize dealer participation in the program, Exxon began charging dealers a three-percent processing fee on sales of gasoline to consumers who paid by credit card, but promised to offset the charge by reducing the wholesale price that each dealer paid for gasoline. Exxon kept this promise for approximately six months

---

[1]A detailed summary of the facts underlying the dealers' suit is set forth in *Allapattah Services, Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1308, 1310–13 (S.D. Fla. 1999).

and reduced the wholesale price by 1.7 cents per gallon. In March of 1983, however, it stopped providing the offset without informing the dealers. The dealers allege that by removing the offset without informing them, Exxon was able to overcharge them for gasoline during the class period.

Upon discovering that the offset was no longer being provided, the dealers filed suit in May of 1991, and the case originally was tried to a hung jury in September of 1999. It was retried in January of 2001, resulting in a unanimous jury verdict in favor of the dealers. The jury found that Exxon breached its contractual obligations to the dealers and fraudulently concealed that breach. Following the return of the jury's verdict, Exxon filed posttrial motions for judgment as a matter of law and/or a new trial. The district court denied those motions, concluding that the evidence presented at trial was more than sufficient to support the verdict. The court further determined that, as a matter of law, the dealers were entitled to recover prejudgment interest in addition to their compensatory damages. Nevertheless, the court denied the dealers' motion for the entry of a final judgment for the class, concluding that it had no authority to enter an aggregate judgment because the jury had not awarded aggregate damages. Instead, the district court entered a final judgment for the class representatives and created an ad hoc claims process through which Exxon could contest each of the

remaining class members' claims for compensatory damages.

Because the district court believed that its "order involve[d] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," it certified the case for interlocutory review pursuant to 28 U.S.C. § 1292(b), asking us to resolve the following questions: (1) whether it properly exercised supplemental jurisdiction over the claims of class members who did not meet the jurisdictional minimum amount in controversy; and (2) whether it was proper to enter judgment for the class representatives, but not for the class as a whole.

DISCUSSION

I. Supplemental Jurisdiction

The first question certified for interlocutory review by the district court was whether it had supplemental jurisdiction over the claims of all of the class members, including those who failed to meet the minimum amount in controversy requirement of 28 U.S.C. § 1332(a). "[W]hether the district court had subject matter jurisdiction over [this action] is . . . subject to *de novo* review." *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 755 (11th Cir. 2000).

The district court's question forces us to address whether 28 U.S.C. § 1367,

6

the supplemental jurisdiction statute, overrules the United States Supreme Court's

decision in *Zahn v. International Paper Co.*, 414 U.S. 291, 301 (1973), that

"[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional

amount, and any plaintiff who does not must be dismissed from the case."[2]

Whether § 1367 overrules *Zahn* has been the subject of considerable debate

among our sister circuits, which have split on the issue. *See Rosmer v. Pfizer Inc.*,

263 F.3d 110, 114 (4th Cir. 2001) (holding "that § 1367 confers supplemental

jurisdiction in diversity class actions, so long as one named plaintiff" satisfies the

minimum amount in controversy requirement), *cert. dismissed*, 536 U.S. 979

(2002); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 934 (9th Cir. 2001) (holding the

same), *cert. denied*, 534 U.S. 1104 (2002); *Stromberg Metal Works, Inc. v. Press

Mech., Inc.*, 77 F.3d 928, 930–31 (7th Cir. 1996) (holding that § 1367 authorizes a

district court to exercise supplemental jurisdiction over a party that does not

_____

[2]We have raised this question before, but never answered it. In *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1080 n.12 (11th Cir. 2000), we declined to address the plaintiff's argument that § 1367 overrules *Zahn*, because "no member of the class ha[d] an individual claim that satisfie[d] the requisite amount in controversy." Shortly thereafter, in *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1273–74 (11th Cir. 2000), we concluded that it was premature to address the question, because the named plaintiffs had not had an opportunity to establish that their claims met the jurisdictional minimum amount in controversy. We therefore remanded the case with instructions that the district court should consider whether § 1367 overruled *Zahn* if the plaintiffs carried their burden of proof on that issue. *Id.* Since that decision, no further opportunity to address the question has presented itself until now.

satisfy the minimum amount in controversy);[3] *In re Abbott Labs.*, 51 F.3d 524, 528–29 (5th Cir. 1995) (holding that as long as the class representatives meet the amount in controversy requirement, a district court may exercise supplemental jurisdiction over the members of the class who do not). *But see Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir. 2000) (holding that *Zahn* remains viable and that each member of a class must meet the requisite jurisdictional amount in controversy); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 222 (3d Cir. 1999) (finding the text of § 1367 ambiguous and relying upon legislative history to hold that § 1367 preserves *Zahn*); *Leonhardt v. W. Sugar Co.*, 160 F.3d 631, 640 (10th Cir. 1998) (holding that § 1367 unambiguously preserves *Zahn*). Upon our own review, we agree with our sister circuits that have held that the language of § 1367 clearly and unambiguously overrules *Zahn* and allows a district court entertaining a diversity class action to exercise supplemental jurisdiction over class members whose claims do not meet the jurisdictional

---

[3]*Stromberg Metal Works, Inc.* was not a class action suit; it involved two plaintiffs, only one of whom satisfied the amount in controversy. 77 F.3d at 930. The Seventh Circuit subsequently applied *Stromberg Metal Works, Inc.* to a class action suit in *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599 (7th Cir. 1997). The Seventh Circuit held in that case that "[a]t least one named plaintiff must satisfy the jurisdictional minimum. If he does, the other named plaintiffs and the unnamed class members can, by virtue of the supplemental jurisdiction conferred on the federal district courts by 28 U.S.C. § 1367, piggyback on that plaintiff's claim." *Id*. at 607.

minimum amount in controversy requirement.[4]

In addressing this question, "we begin by examining the text of the statute to determine whether its meaning is clear." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). "In construing a statute we must begin, and often should end as well, with the language of the statute itself." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997). This is so because "'[we] must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

Section 1367(a) provides,

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

---

[4]We are unpersuaded by Exxon's argument that "[t]he 'fact that a statute has been interpreted differently by different courts is evidence that the statute is ambiguous and unclear.'" The mere existence of a split among the circuits as to the proper interpretation of § 1367 does not relieve us of our obligation to interpret the statute independently. *See Minor v. Dugger*, 864 F.2d 124, 126 (11th Cir. 1989) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."); *see also Rosmer*, 263 F.3d at 118 ("[W]e cannot allow the fact that other circuits have called a statute ambiguous to negate this circuit's duty to interpret the text of the enactment.").

28 U.S.C. § 1367(a).  Section 1367(b) continues,

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

*Id*. § 1367(b).

We believe that it is clear from the plain language of the statute that § 1367(a) is a general grant of supplemental jurisdiction, which is then narrowed for diversity cases by § 1367(b).[5]  In considering whether the district court's exercise

---

[5]Exxon argues that "the text and structure of §1367 [sic] preserve the jurisdictional requirement of *Zahn*."  In so arguing, however, it essentially asks us to construe § 1367 in such a way as to apply only where the court already has original jurisdiction over every class members' claim.  We do not believe that the statute can be read to suggest this.  If a district court is required to have original jurisdiction over every class members' claim, the last sentence of § 1367(a), providing that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of *additional parties*" would be superfluous.  28 U.S.C. § 1367(a) (emphasis added).  There would be little reason for the statute to provide for the exercise of claims involving the joinder of additional parties if the district court first were required to have original jurisdiction over those claims.  We therefore cannot read the statute in this way. *See United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) (providing "that courts should disfavor interpretations of statutes that render language superfluous" (internal quotation marks omitted)).

Additionally, Exxon argues that the legislative history of § 1367 "confirms Congress' [sic] intent to preserve *Zahn* and prior cases."  We, however, see no need to parse the legislative history to divine congressional intent with respect to § 1367, because we consistently have reiterated that the text of a statute controls and that we may not "consider legislative history when the statutory language is unambiguous." *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002) (per curiam), *petition for cert. filed*, 71 U.S.L.W. 3367 (U.S. Nov. 8, 2002) (No. 02-728); *see also Harry*, 291 F.3d at 772 ("Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, we do not resort to legislative history to cloud

of supplemental jurisdiction over the dealers' claims was proper, we therefore first must determine whether the dealers satisfied the requirements of § 1367(a). The parties agree that the district court had original jurisdiction over the class representatives' claims, because they satisfied the $50,000 jurisdictional minimum amount in controversy requirement.[6] Section 1367(a) therefore authorized the court to exercise supplemental jurisdiction over those claims that were so closely related to the original claims that they "form[ed] part of the same case or controversy." *Id.* § 1367(a). Because the dealers' claims arose from the same agreements and contractual obligations as the class representatives' claims, the requirements of § 1367(a) were satisfied.

Thus, the district court was entitled to exercise supplemental jurisdiction over the dealers' claims pursuant to § 1367(a) unless those claims fell within one of the exceptions listed in subsection (b), which explicitly prevents courts from exercising supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil

---

a statutory text that is clear" (internal quotation marks omitted).); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("When the import of the words Congress has used is clear . . ., we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language."), *cert. denied*, 532 U.S. 1065 (2001).

[6]The minimum amount in controversy has been raised to $75,000. *See* 28 U.S.C. § 1332.

Procedure."[7] *Id.* § 1367(b). Notably, Federal Rule of Civil Procedure 23, which pertains to class actions, is not one of the enumerated exceptions. Exxon argues that because § 1367(a) requires that the district court have original jurisdiction over each member of the class, "it would have been redundant for Congress to enumerate Rule 23 as a specific exclusion from *supplemental* jurisdiction in §1367(b) [sic]." We disagree. The fact that Congress created explicit exceptions to § 1367(a)'s broad grant of supplemental jurisdiction but did not include Rule 23 among them leads us to conclude that it did not intend to prevent district courts from exercising supplemental jurisdiction over the claims of class members. Indeed, it is a well-accepted rule of statutory construction in this Circuit that "where a statute explicitly enumerates certain exceptions to a general grant of power, courts should be reluctant to imply additional exceptions in the absence of a clear legislative intent to the contrary." *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1502 (11th Cir. 1991). Because we do not believe that the text of the statute expresses any legislative intent to prevent district courts from exercising supplemental jurisdiction in diversity class actions, we decline to "rewrite the statute to insert Rule 23 into § 1367(b)'s list of exceptions." *Rosmer*,

---

[7]Section 1367(a)'s grant of supplemental jurisdiction also is subject to the exceptions enumerated in subsection (c), but that subsection relating to discretionary jurisdiction is inapplicable to this case. *See* 28 U.S.C. § 1367(a).

263 F.3d at 115; *see also Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it."), *cert. denied*, 532 U.S. 1065 (2001).

Thus, we find that § 1367 clearly and unambiguously provides district courts with the authority in diversity class actions to exercise supplemental jurisdiction over the claims of class members who do not meet the minimum amount in controversy as long as the district court has original jurisdiction over the claims of at least one of the class representatives. We therefore conclude that § 1367 overrules *Zahn*.

## II. Entry of Judgment

We now turn to the second issue certified for interlocutory review – whether the district court should have entered an aggregate judgment for the dealers based upon the jury's verdict finding Exxon liable to the dealers.[8] Because we do not

---

[8]Exxon also argues that it was inappropriate for the district court to enter individual final judgments for each of the named class representatives, because no reasonable jury could have found that Exxon breached its obligations under the dealer agreements. Exxon's argument, however, is little more than an attack on all of the factual findings made by the jury. As we find that the jury's verdict was supported by substantial evidence, Exxon's argument is without merit. *See Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1154 (11th Cir. 2002) ("A verdict must stand unless there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue" (internal quotation marks omitted).).

believe that an aggregate final judgment was warranted in this case, we also must

address the following issues raised in the dealers' cross-appeal: (1) whether the

district court erred by determining that Exxon is permitted to participate in the

claims process; and (2) whether it is proper to allow Exxon to assert set-off claims

during the claims process.

## A. Aggregate Judgment

The dealers argue that once the jury returned a verdict in their favor, the

district court should have entered a final judgment awarding aggregate damages to

the class.[9] Although they acknowledge that the jury did not award aggregate

damages, the dealers argue that the court could have calculated the total amount of

damages on its own and entered a judgment reflecting that amount. Assuming

arguendo that the district court had the authority to calculate the dealers' damages

and enter an aggregate judgment, we do not believe that it would have been

appropriate for the court to exercise that authority in this case.[10]

As an initial matter, we note that our consideration of whether an aggregate

---

[9]We review the district court's denial of judgment for the class and entry of judgment in favor of the class representatives de novo. *See Maytronics, Ltd. v. Aqua Vac Sys., Inc.*, 277 F.3d 1317, 1320 (11th Cir. 2002).

[10]Although we make this assumption, we express no opinion as to whether a district court has the authority to enter an aggregate judgment in a class action suit when the jury has not awarded aggregate damages.

final judgment is appropriate in this case is complicated by the lack of case law pertaining to this issue. Therefore, like the district court, we find ourselves without much guidance from other courts. Upon our own review, however, we agree with the district court that this is not the ideal case for the entry of an aggregate final judgment, because several significant obstacles prevent the entry of such a judgment. Moreover, we do not believe that an aggregate judgment would benefit the class greatly or result in a more expedient disposition of each dealer's claim.

Although we believe that Exxon's liability to the dealers was decided properly on a class-wide basis, we agree with the district court that the determination of the amount that each dealer was overcharged during the class period must take place on an individual basis, taking into account the amount of compensatory damages to which each dealer is entitled. Such individualized proof of claims would be necessary regardless of whether an aggregate judgment was entered, and the considerations that must be taken into account to calculate the correct amount of damages during the claims process reveal the obstacles to entering an aggregate judgment for the class. These obstacles include (1) accounting for those dealers who either have opted out of the class or not submitted claims; (2) accounting for those dealers whose claims were barred by

15

the Ohio statute of limitations; (3) the difficulty of awarding prejudgment interest on a class-wide basis when the applicable amount of interest varies from state to state; and (4) determining whether the dealers' claims are subject to further reduction by set-off claims asserted by Exxon.[11]

In light of these obstacles, we believe that the district court's decision not to enter an aggregate judgment was proper, because the judgment would not have expedited or simplified the claims process. Indeed, it appears that the entry of an aggregate judgment would complicate the claims process further, and we believe that the only real effect of entering an aggregate judgment in this case would have been to set aside a large pool of money, which would have accumulated interest while the claims process took place.[12] Even if the funds were deposited immediately into an escrow account, the dealers would not benefit greatly from having the money set aside, because they would not be entitled to receive their individual shares of compensatory damages until after their claims had been

---

[11]We will address the dealers' arguments with respect to the statutes of limitations in Section III(C) and the set-off claims in Section II(C).

[12]There is a high probability that an aggregate award of damages would have resulted in a substantial pool of unclaimed funds at the conclusion of the claims process. Before the district court and on appeal, the dealers raised the issue of whether Exxon would be entitled to reverter of the funds remaining at the conclusion of the claims administration process. Because we determine that an aggregate final judgment is not appropriate in this case, we need not address this issue.

proven.

We thus find no compelling justification for the entry of an aggregate final judgment in this case, and the dealers have pointed us to no authority suggesting that the entry of such a judgment was required.[13] Therefore, we conclude that, under the facts of this case, the district court's refusal to enter an aggregate final judgment for the class did not constitute reversible error.

## B. Exxon's Right to Participate in the Claims Process

The district court determined that Exxon had a right to participate in the claims administration process, because it was a real party in interest and would have to pay the damages due as a result of the verdict and claims process. In light of that process, it determined that Exxon would be permitted to file objections to each dealer's claim contesting (1) whether the dealer actually was a dealer during the class period; (2) whether the dealer's claim was subject to a statute of limitations defense or barred by a release; (3) whether the amount of compensatory

---

[13]We note that this was not a case in which an aggregate award was authorized based upon the violation of a statute. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) (allowing the class to submit aggregate proof of damages for violations of the Farm Labor Contractor Registration Act where the class sought statutory rather than actual damages and individual proof of damages was not required for recovery). This also was not a case in which the precise aggregate damages of the class could be ascertained easily by a simple mathematical calculation. *See Van Gemert v. Boeing Co.*, 553 F.2d 812, 813 (2d Cir. 1977) (determining that the class's aggregate damages could be calculated by multiplying the number of unconverted debentures by the difference between the value and redemption price of the stock).

damages and prejudgment interest to which each dealer was entitled was calculated properly; and (4) whether the dealer's claim was subject to reduction by one of Exxon's set-off claims.

The dealers argue that Exxon had no right to participate in the claims process, because the determination of liability already had been made and the only remaining issue in this case was how to distribute the damages. In so arguing, the dealers rely primarily upon the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 (1980), in which the Court held that Boeing Co. did not have a present interest in the damage fund that was to be distributed to a class of investors. We, however, believe that *Boeing Co.* is inapposite to this case.

In *Boeing Co.*, an investor class action suit, Boeing Co. did not appeal the district court's entry of a judgment for the class. *Id*. at 479 n.5. Rather, its appeal was narrowly tailored to the issue of whether attorney's fees could be awarded from the portion of the judgment fund that remained unclaimed at the conclusion of the claims process. *Id*. at 477. The Supreme Court determined that "[t]he judgment on the merits stripped Boeing of any present interest in the fund" and thus concluded that Boeing Co. had no interest in the litigation between the class and its attorneys regarding attorney's fees. *Id*. at 481 n.7. The Court, however, acknowledged that "Boeing did have an interest, arising from its colorable claim

18

for the return of excess money, in whether attorney's fees could be assessed against the entire fund rather than against the portion actually claimed." *Id.*

Thus, we believe that the dealers' reliance upon *Boeing Co.* is misplaced. Contrary to the dealers' assertions, that decision does not suggest that a defendant has no interest at all in the postverdict resolution of class claims; rather, it suggests that a defendant has no interest in how the class members apportion and distribute a damage fund among themselves. *Id.*; *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members."). In this case, however, no damage fund has been created and there are several issues that must be resolved during the claims process. As one commentator noted in addressing individual issues among class members,

> If the only issue is to determine the amount of damages which class members are entitled to receive and this determination can be accomplished almost mechanically, simple proofs similar to those used for summary judgment are often appropriate, . . . especially when individual claims are small or relatively modest. . . .
> On the other hand, when large claims are involved, . . . one would expect that they would be more hotly contested by the defendants and more vigorously asserted by the claimants. The economic stakes being more substantial in large claims, fairness dictates that the procedures should allow for a more formal adversary proceeding.

3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 9:64, at 457–58 (4th ed. 2002). Because Exxon has certain defenses to each dealer's claim, we believe that an adversarial claims process is warranted in this case. We therefore conclude that Exxon still has a present interest in the claims process, and due process requires that it be allowed to participate in that process.

## C. Exxon's Right to Assert Set-Off Claims

Having determined that Exxon has a right to participate in the claims process, we must address the dealers' argument that the district court erred when it determined that Exxon could assert set-off claims against the dealers during the claims process, because its set-off claims were untimely raised.

Several federal courts have determined that the appropriate time for a class action defendant to raise affirmative defenses and set-off claims is during the damages phase of the action. *See Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 450 (E.D. Pa. 1975) (determining that the defendant's counterclaims "could be effectively presented when individual claims for damages are presented"); *Serpa v. Jolly King Rests., Inc.*, S.D. Cal. 1974, __ F. Supp. __ (No. 72-423-N, Mar. 29, 1974) ("Once liability is established and claims for damages filed, then and only then, may the defendants raise specific and detailed counterclaims to offset the damage claims."); *Donson Stores, Inc. v. Am. Bakeries*

20

*Co.*, 58 F.R.D. 485, 489–90 (S.D.N.Y. 1973) ("If liability is established, other issues, including damages and counterclaims, can be handled on a class member-by-class member basis."). We agree with the reasoning of those courts and therefore find that Exxon was not required to assert its set-off claims in its answer.[14] Thus, the district court did not err in holding that Exxon can raise those claims during the claims administration process.

## III. Exxon's Remaining Claims

Having answered the two certified questions, we now address the following additional issues raised by Exxon: (1) whether the class should have been certified; (2) whether the district court should have permitted the jury to consider extrinsic evidence pertaining to the dealer agreements; (3) whether the dealers'

---

[14]Ordinarily, a party must assert a counterclaim in its pleadings. *See* Fed. R. Civ. P. 13. Rule 13, however, is inapplicable in class action suits, because "absent class members are not opposing or litigating adversaries for purposes of Rule 13." *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 238 F. Supp. 2d 963, 967 (S.D. Ohio 2003) (internal quotation marks omitted). As one commentator has explained,

> Rule 13 expressly is applicable only to opposing parties.
> A court may properly conclude that absent class members are not opposing or litigating adversaries for purposes of Rule 13, and therefore Rule 13 is inapplicable in a class context. Because compulsory counterclaims can only be potentially involved when Rule 13 applies, if absent class members are not opposing parties within the meaning of the rule, it follows that any counterclaims that may be permitted in a class action are not governed by Rule 13 and *are purely discretionary with the court.*

2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:34, at 299–300 (4th ed. 2002) (emphasis added). Thus, the district court had discretion to decide whether Exxon should be allowed to assert set-off claims against the dealers.

21

claims were barred by the applicable statutes of limitations; and (4) whether the district court should have admitted the testimony of the dealers' expert witness.

## A. Class Certification

Exxon argues that the district court erroneously certified and tried this case as a class action pursuant to Rule 23(b)(3). Exxon maintains that as a result of this improper certification, each dealer's claim and Exxon's affirmative defenses were resolved on the basis of a single set of facts, ignoring the unique factual and legal issues relevant to the claims of each individual class member.

"We review the district court's grant of class certification for an abuse of discretion." *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1022 (11th Cir. 1996). "A class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)."[15] *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (internal quotation marks omitted), *cert. denied sub nom. Zeirei Agudath Isr. Bookstore*, 532 U.S. 919 (2001). The district court certified this class under Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual

---

[15]Exxon does not challenge the district court's finding that the class met the requirements of Rule 23(a).

members." Fed. R. Civ. P. 23(b)(3).

"[T]o determine whether common questions predominate, we are called upon to examine the cause[] of action asserted in the complaint on behalf of the putative class." *Rutstein*, 211 F.3d at 1234 (alteration in original) (internal quotation marks omitted). The common issues among the class in this case were (1) whether the DFC program imposed an obligation on Exxon to reduce wholesale prices; (2) whether Exxon breached that obligation when it failed to continue providing the offset to the dealers; and (3) whether Exxon fraudulently concealed that breach. If these issues were subject to generalized proof and predominated over the individual issues raised by Exxon's affirmative defenses, class certification was proper. *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002) ("[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position" (internal quotation marks omitted).).

Contrary to Exxon's argument, we do not believe that this case is one "where initial determinations, such as the issue of liability *vel non*, turn upon highly individualized facts." *Rutstein*, 211 F.3d at 1235–36 (internal quotation marks omitted). Exxon's primary argument in support of its contention that the

23

class should not have been certified is that there were individual issues inherent in each dealer's breach of contract claim and its own affirmative defenses. We find that Exxon's argument that each breach of contract claim raised an individual issue is without merit. Because all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers, the duty of good faith was an obligation that it owed to the dealers as a whole. Whether it breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis.

Thus, the real question for the district court was whether the common issue of liability predominated over the individual issues raised by Exxon's affirmative defenses, which pertained primarily to the issue of damages rather than liability. In similar situations, numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues"), *cert. denied sub nom. Visa U.S.A. Inc. v. Wal-Mart Stores, Inc.*, 536 U.S. 917 (2002); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) ("Although calculating damages will require some individualized

24

determinations, it appears that virtually every issue prior to damages is a common issue"); *Tayloe*, 67 F.R.D. at 450 ("[I]n the event of a finding of liability, damages might have to be established on an individual basis. This fact alone, however, does not preclude class action treatment."). We agree. Based upon the facts of this case, we believe that Exxon's liability to the class for breach of the dealer agreements predominated over the individual issues relating to damages. Thus, the district court did not abuse its discretion in certifying the class.

## B. Extrinsic Evidence

Exxon argues that the district court impermissibly allowed the jury to consider extrinsic evidence in determining whether Exxon breached its obligations under the dealer agreements.

"What a contract provision means, or whether it is ambiguous, are questions of law, which we review *de novo*." *Reynolds v. Roberts*, 202 F.3d 1303, 1313 (11th Cir. 2000). Generally, "parol evidence is admissible to prove the elements of an agreement [only] where a writing is ambiguous on its face or fails to contain the elements of a complete contract." *Indus., Invs. & Agencies (Bah.) Ltd. v. Panelfab Int'l Corp.*, 529 F.2d 1203, 1211 (5th Cir. 1976). Under the Uniform Commercial Code (UCC), however, extrinsic evidence of the parties' "course of dealing or usage of trade" or "course of performance" may be used to explain or

25

supplement the writing. U.C.C. § 2-202(a). The UCC therefore rejects the common law rule that parol evidence is admissible only where the terms of a contract are ambiguous. *See id.* § 2-202, cmt. n.1(c); *see also Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 8 (4th Cir. 1971) (recognizing that the UCC changed the common law rule "that extrinsic evidence may not be received to explain or supplement a written contract unless the court finds the writing is ambiguous").

In this case, the district court determined that because Exxon was accused of breaching its contractual duty of good faith in setting its wholesale prices, evidence pertaining to "Exxon's adoption and implementation of the DFC program, the unilateral amendment of its dealers' credit card agreements, its official public explanation of its performance obligation and its claimed history of meeting its performance obligations to its dealers" was relevant evidence of the manner in which Exxon set its prices during the period in which the DFC program was in effect. *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1300, 1306 (S.D. Fla. 1999). The court thus believed that such evidence would assist the jury in determining whether Exxon breached its duty under the dealer agreements. We agree and conclude that the district court correctly determined that the dealers could use extrinsic evidence to explain the nature of Exxon's good faith obligation

26

to the dealers.[16]

## C. Statutes of Limitations

Exxon contends that the district court erred when it found that, with the

exception of the Ohio dealers, none of the dealers' claims were barred by the

applicable statutes of limitations.[17] Exxon posits that most jurisdictions required

that a breach of contract action be brought within four years of the breach and that

[16]Exxon also argues that the district court erred in submitting whether this case constituted a normal case under the UCC to the jury. With respect to open-price terms, section 2-305(2) of the UCC provides that "[a] price to be fixed by the seller or by the buyer means a price for him to fix in good faith." U.C.C. § 2-305(2). The official comment to section 2-305(2) provides that "[g]ood faith includes observance of reasonable commercial standards of fair dealing . . . . But in the normal case, a posted price or a . . . price in effect . . . satisfies the good faith requirement." *Id.* § 2-305, cmt. n.3 (internal quotation marks omitted). Exxon argues that because the dealers were charged Exxon's price in effect at the time of fuel deliveries, it satisfied the good faith requirement. The dealers alleged, however, that this case was not a normal case, because Exxon was attempting to drive some of the dealers out of business, and, therefore, Exxon did not satisfy the good faith requirement. We agree with the district court that whether this case constituted a normal case was a factual issue necessary to determine whether Exxon acted in good faith. It therefore was a question for the jury.

Exxon further argues that even if this were a question for the jury, the district court erred in giving the jury an instruction defining the term "normal" in accordance with the dictionary definition. Exxon, however, acknowledges that the UCC does not define what constitutes a "normal" case, and Exxon does not suggest any alternative definition that would have been more suitable. We previously noted that "to determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001). We therefore do not believe that the district court erred in defining the word "normal" by providing the jury with the dictionary definition of the term "normal."

[17]After reviewing the relevant law in each jurisdiction, the court determined that fraudulent concealment was not a defense to the statutes of limitations in Ohio and Florida. After the trial, however, the court noted that a recent Florida Supreme Court decision changed the law in Florida pertaining to the delayed discovery doctrine. Based upon that change in the law, the court concluded that the Florida dealers' claims were not barred by the statute of limitations.

most of the dealers' claims occurring prior to May of 1987 were barred, because the dealers did not file suit until May of 1991. The dealers, however, allege that the statutes of limitations were tolled, because Exxon fraudulently concealed its breach.

The district court determined that whether Exxon fraudulently concealed its breach was a question of fact for the jury. After the jury returned its verdict, in which it found that Exxon fraudulently concealed its breach, Exxon filed a motion for a judgment as a matter of law or, in the alternative, a motion for a new trial based in part upon its contention that the dealers did not prove the elements of fraudulent concealment. The court, however, found that the dealers presented "clear and convincing" evidence that Exxon fraudulently concealed its breach and denied the motion.

"A district court's denial of a motion for judgment as a matter of law is reviewed by this court *de novo*." *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1176 (11th Cir. 2002). The motion should be granted "only if there was no legally sufficient basis for a reasonable jury to find in favor of the nonmoving party." *Id.* at 1176–77 (internal quotation marks omitted).

After a careful review of the record, we believe that the evidence presented at trial was sufficient to support the jury's finding that Exxon fraudulently

28

concealed its breach of the dealer agreements. The dealers presented evidence that each year, at annual meetings between Exxon executives and dealer representatives, the executives told the dealers that the DFC offset still was being provided even though the executives knew otherwise. Although these statements were not made to each individual dealer, they were made to the dealer representatives who in turn were asked to report to their constituent dealers what was discussed at the meetings. Exxon argues that the dealers presented no evidence at trial that the representatives actually did report back to their constituent dealers, but two Exxon executives testified that the minutes of each annual meeting were sent to each dealer representative with the intention that they then be mailed to each individual dealer. This evidence was sufficient for the jury to find that the Exxon executives' statements regarding the DFC program were disseminated among the dealers and that the dealers relied upon those representations.

Because we find that there was a legally sufficient basis for finding that Exxon fraudulently concealed its breach, thereby tolling the statutes of limitations, we conclude that Exxon was not entitled to a judgment as a matter of law or a new

trial upon that basis.[18]

## D. Expert Testimony

Exxon argues that the district court erred in admitting the testimony of Dr. Raymond Fishe, the dealers' expert witness, because he had no specialized knowledge of pricing systems in the petroleum industry and his methodology was flawed.

"We review a trial court's evidentiary rulings on the admission of expert witness testimony for abuse of discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1312 (11th Cir. 2000). The district court conducted an extensive six-day hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). After the hearing, at which the court heard testimony from both

---

[18]Additionally, Exxon argues that the district court erred by failing to enforce written releases signed by approximately 5193 of the dealers at the end of their respective terms as Exxon dealers. The releases purported to release both parties from any and all causes of action arising out of or in connection with the dealer agreements. The district court determined that, like the dealer agreements, the releases were governed by the UCC and therefore were subject to the same duty of good faith as the dealer agreements. It thus concluded that the releases would be voidable if the jury found that Exxon breached its duty of good faith and fraudulently concealed its breach.

It is well settled that a party's fraud can render a release voidable. *See, e.g.*, *Kobatake v. E.I. DuPont De Nemours & Co.*, 162 F.3d 619, 625 (11th Cir. 1998) (per curiam) (applying Georgia law); *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1314–15 (5th Cir. 1983) (recognizing that fraudulent inducement or concealment can void a release). Because we believe that the jury's finding that Exxon fraudulently concealed its breach was supported by substantial evidence, we conclude that the releases signed by the dealers were voidable, with the exception of the Category-four releases signed by certain Delaware dealers, which the district court determined were enforceable.

parties' expert witnesses, it entered a lengthy order determining that (1) both parties' expert witnesses were qualified to testify; (2) the methodologies of both experts were sufficiently reliable; and (3) the experts would assist the jury in understanding the issues at trial. Based upon these determinations, the court concluded that each expert met the requirements of *Daubert* and Federal Rule of Evidence 702.

Given the district court's exhaustive effort in determining that Dr. Fishe's methodology was reliable, we do not believe that it abused its discretion in allowing him to testify at trial where Exxon was able to cross-examine him fully and refute his testimony through the use of its own expert witness.

CONCLUSION

Thus, we join with the Fifth, Seventh, Ninth, and Fourth Circuits in ruling that § 1367 authorizes the exercise of supplemental jurisdiction in a diversity class action over claims that do not meet the minimum amount in controversy requirement, overruling the Supreme Court's holding in *Zahn*. It therefore was appropriate for the district court to exercise jurisdiction over the claims of those class members whose claims did not meet the $50,000 minimum amount in controversy requirement. We further find that the district court did not err in denying the dealers' motion for entry of an aggregate final judgment and devising

31

an appropriate procedure for the administration of each dealer's claim. With respect to each of the remaining issues raised by the parties, we find no reversible error. Accordingly, we AFFIRM.