**ALLAPATTAH SERVICES, INC., et. al., Plaintiffs,**

v.

**EXXON CORPORATION, Defendant.**

**No. 91–0986CIVGOLD.**

United States District Court, S.D. Florida.

May 18, 2005.

See, also, 362 F.3d 739.

Eugene E. Stearns [Lead counsel], Mark P. Dikeman, Stearns Weaver Miller, Weissler Alhadeff & Sitterson, P.A., Miami, FL, Gerald M. Bowen, Esq., Oakhill, VA, Cass Walker Christenson, Daniel G. Jarcho, McKenna Long & Aldridge LLP, Washington, DC, Jewel H. Grutman, Stamford, Conn., Sidney M. Pertnoy, Jay H. Solowsky, Leah Lariviere, Pertnoy, Solowsky & Allen, P.A., Miami, FL, Marshall Joel Osofsky, Moyle, Flanigan, Katz, Raymond & Sheehan, P.A., West Palm Beach, FL, Marc M. Coupey, Millwood, N.Y., for Plaintiffs.

Larry Stewart, Esq. [Lead counsel], Stewart Tilghman Fox & Bianchi, P.A., Miami, FL, Robert G. Abrams, Robert J. Brookhiser, Jr, Darren B. Bernhard, J. Anthony Chaves, Stuart H. Harris, Terry L. Sullivan, Howrey, Simon, Arnold & White, LLP, Washington, D.C., Robert K. Burlington, Paul Schwicp, Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, Miami, FL, Thomas Julin, Jamie Zysk, Marty Steinberg, Alejandra H. Pennie, Huton & Williams, Miami, FL, Robert Wallis, Esq., Exxon Corporation, Houston, TX, for Defendants.

**ORDER ON PLAINTIFFS' EMERGENCY MOTION TO STRIKE EXXON'S ANSWERS AND AFFIRMATIVE DEFENSES TO CLASS MEMBER CLAIMS, FOR ENTRY OF DEFAULT JUDGMENT, AND FOR FURTHER SANCTIONS AGAINST EXXON CORPORATION AND ITS ATTORNEYS**

GOLD, District Judge.

Plaintiffs Allapattah Services Inc., et al., pursuant to Fed.R.Civ.P. 12(f), 28 U.S.C. § 1927, and this Court's inherent power to control the integrity of the judicial process and the conduct of the parties before it, move this Court to enter orders: (1) striking Exxon's frivolous answers and affirma-

tive defenses filed in the claims administration process which seek to obstruct the timely processing of claims by re-litigating the very issues already resolved by the jury's verdict and this Court's post-trial orders which have been affirmed on appeal by the Eleventh Circuit; (2) entering final default judgment against Exxon on each claimant's claim in the amount determined by the Special Master in accordance with the Order on Procedure; (3) revoking the Court's discretionary ruling to allow Exxon to assert set-offs in the claims process; (4) requiring Exxon's counsel to forfeit and disgorge any fees paid in connection with the filing of Exxon's frivolous pleadings; (5) with respect to claims as to which Exxon has yet to file answers, requiring Exxon to limit the denials and affirmative defenses set forth in its answers to the limited number of objections expressly authorized in the Order on Procedure; and, (6) awarding undersigned counsel the reasonable costs and attorney's fees incurred in connection with this motion and related proceedings [D.E. # 1874].

On April 18, 2005, Exxon filed its Response to Plaintiffs' Emergency Motion to Strike Exxon's Answers and Affirmative Defenses, for Default Judgment and for Sanctions [D.E. # 1899]. On April 25, 2005, Plaintiffs filed their reply [D.E. # 1912]. Oral argument was held on Friday, April 29, 2005. For reasons set forth in this order, I grant Plaintiffs' motion in part by striking particular affirmative defenses and Exxon's release set-off. I also award attorney's fees, costs, and other sanctions.

## I. BACKGROUND OF FACTS AND PRIOR PROCEEDINGS.

### A. Pre–Trial Rulings On Damages, Releases and Prejudgment Interest.

Prior to trial, Exxon filed numerous motions challenging Plaintiffs' stated intention to establish Exxon's duty, breach and damages on a class-wide basis [D.E. # s, e.g., 7, 239, 270, 296, 298, 388, 409, 412, 415, 673, 744, 746, 976, and 977]. Exxon complained particularly about Plaintiffs' intention to prove damages on an annualized, cents-per-gallon basis that would apply to each member of the Class. I entered a number of orders rejecting Exxon's arguments and ultimately adopting Plaintiffs' proposed special jury verdict providing for determination of damages in this manner. *See Allapattah Servs. Inc. v. Exxon Corp.*, 61 F.Supp.2d 1300 (S.D.Fla.1999); *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F.Supp.2d 1308 (S.D.Fla.1999); *Allapattah Servs. Inc. v. Exxon Corp.*, 61 F.Supp.2d 1326 (S.D.Fla. 1999); and *Allapattah Servs., Inc. v. Exxon Corporation*, 188 F.R.D. 667 (S.D.Fla. 1999).

In the last referenced order, I specifically stated that I intended to rule on Exxon's defense related issues pre-trial. 188 F.R.D. at 670 n. 1. I did so with regard to Exxon's affirmative defense that releases affecting in excess of 5,000 dealer-members preclude Plaintiffs' action for breach of contract, and its claim that prejudgment interest could not be handled on a class-wide basis.

In connection with Exxon's release defense, I concluded that Exxon's form releases did not bar the Class Dealers' claims based on two grounds. First, I held that if the jury determined, through special interrogatories, that Exxon breached its good faith obligations to its dealers under its sales agreements, and that such breach was fraudulently concealed from the class, then the Releases may not, in good faith, be uniformly enforced against an involuntary waiver of those rights. *Id.* at 681–684. Second, as an alternative

ground, I concluded that the plain meaning of the terms "trade accounts" and "reimbursements," which appear in the vast majority of the releases, unambiguously, and, as a matter of law, except Plaintiffs' claims from the releases. *Id.* at 681 n. 24.[1] I also concluded, as a matter of law, that releases executed after certification of the Plaintiff–Class cannot bar those Plaintiffs from participating in the litigation of this action. *Id.* at 685.[2] The sole exception was for releases executed in Delaware. Even as to those releases, I concluded that they were not enforceable against the dealers that included the "exception" language, *see id.* at 681 n. 24, but would be enforceable, if at all, against those Delaware dealers whose releases contain no such qualifying language (i.e. the Category-four releases). *Id.* at 684 n. 26. Accordingly, the issue of releases was finally and unequivocally resolved by my order. Notwithstanding, Exxon again raises the same issue in its affirmative defenses filed during the claims administration process.

In connection with prejudgment interest, I surveyed the applicable state laws and concluded, pre-trial, that the Plaintiffs were entitled to prejudgment interest in the event of a jury verdict. *See id.* at 688 ("[T]he entitlement and accrual periods of prejudgment interest shall be in accordance with the aforementioned conclusions"). Where prejudgment interest is awarded as a matter of right, I further concluded that the Plaintiffs' breach of contract damages were liquidated. *Id.* at 685 n. 29.

## B. Post–Trial Rulings On All Substantive Issues Pertaining to Damages, Prejudgment Interest, Releases and on the Claims Administration Process Including Set-offs.

On February 20, 2001, the jury rendered a Special Verdict in favor of the Class Dealers [D.E. # 1395]. Besides finding for Plaintiffs on issues of liability and causation, the jury, in accordance with Fed. R.Civ.P. 49(a), determined class damages in the form of a common guideline or factor (cents-per-gallon on a year-to-year basis during the Class Period). After the verdict, the Dealers filed a motion for entry of an aggregate, lump some verdict for the Class as a whole [D.E. # 1409]. Exxon opposed the motion, arguing that by virtue of the "on average" nature of Exxon's pricing obligation, Plaintiffs had failed to prove that any dealer had been damaged, that damages would have to be established on a dealer-by-dealer basis in the claims administration process, and that damages were not liquidated, thereby pre-

---

1. Exxon asserted as an affirmative defense that over 5,193 dealers who were members of the class executed standard Mutual Termination and Release Agreements. Plaintiffs conceded that 385 of the 5,193 Releases did not contain qualifying language that would except the basis of Plaintiffs' breach of contract claim; that is, these Releases do not contain reference to exceptions for "trade accounts" or "reimbursements." As to these Releases, I held that ".... except in Delaware, even these Releases, if entered into prior to Exxon's disclosure to the dealer-class of its breach, are unenforceable if the jury finds breach of contract and fraudulent conceal-

ment prior to the date the Releases were executed." 188 F.R.D. at 680 n. 22.

2. Exxon later claimed that I made no ruling with regard to General Releases that were entered during the period between disclosure and class certification. In *Allapattah Services, Inc. v. Exxon Corp.,* 157 F.Supp.2d 1291, 1308 n. 16 (S.D.Fla.2001), I held that these Releases fall with the category of "pre-certification Releases," and, in light of the Special Verdict findings, may not be enforced.

cluding an award of prejudgment interest [D.E. # 1416, pages 15–18]. Exxon also argued that the jury's finding that Exxon's contractual duty was owed to all dealers rather than to individual dealers constituted a conflict in the verdict that entitled it to judgment as a matter of law [D.E. # 1440].

I denied Exxon's arguments In a series of interlocking orders and judgments intended to provide for interim, but final, review of Exxon's liability to every member of the class for an award of compensatory damages in an amount determined by the jury's verdict, plus prejudgment interest. The orders consist of the Order on Procedure for Determination and Entry of Final Judgment (the "Order on Procedure") [D.E. # 1464] (also cited as *Allapattah Services, Inc. v. Exxon Corp.*, 157 F.Supp.2d 1291 (S.D.Fla.2001)), the Judgment on Special Verdict (the "Interim Judgment") [D.E. # 1465], the Order Denying Exxon's Rule 50 and 59 Motions (the "Rule 50 Order") [D.E. # 1463], and the Rule 54(b) Final Judgment on Jury Verdict for Named Plaintiffs (the "Rule 54(b) Final Judgment") [D.E. # 1507].

### 1. Each Class Member's Entitlement to Compensatory Damages In an Amount Determined by the Jury's Special Verdict.

In my Rule 50 Order and Order on Procedure, I expressly rejected Exxon's argument that based on the "on average" nature of the Exxon's obligation to reduce whole sale prices, some class members were damaged to a greater or lesser extent than others. I held that the jury's verdict established that Exxon had failed to provide any offset to any dealer throughout the damage period, that Plaintiffs had properly established class-wide

breach, and that the cents per gallon damage award would determine the amount of every class member's damage in the administrative claim process.

I also rejected Exxon's argument as to the supposed conflict in the jury verdict concerning the nature of Exxon's pricing obligations:

Although Exxon did its best to confuse the jury as to its obligations to its dealers with the tests used to prove or disprove its performance, ... [i]n the Court' view, Exxon's argument regarding conflict in the verdict form is a "smoke-screen" to hide from its own self-created obligation established during the creation and implementation of the DFC Program.

[D.E. # 1463, pages 5–6].

Consistent with these rulings, the Interim Judgment on Special Verdict specifically provided that the annual cents per gallon damage factor in the jury verdict "shall apply in all further proceedings involving the Class Plaintiffs and Exxon Corporation in the Claims Administration Process" [D.E. # 1465]; *see also* 157 F.Supp.2d at 1328. The Judgment provided:

The Special Verdict made certain factual findings and established a damage factor in favor of the Class Plaintiffs in this case. *Those findings and the damage factors shall govern and apply in all further proceedings involving the Class Plaintiffs and Exxon Corporation in the Claims Administration Process.*

*Id.* at 1328 (emphasis added).

In my Order on Procedure for Determination and Entry of Final Judgement, i squarely held that the jury's applicable factor or guideline will apply to determine the measure of damages of each Class

Dealer during the claims administration process. *Id.* at 1298. I also provided that the same procedure was to be used to calculate the compensatory damages awarded to the named Plaintiffs in the Rule 54(b) Final Judgment. *Id.* at 1324 n. 32 ("As an alternative means of bring the issues associated with this case to the attention of the Eleventh Circuit as soon as possible, the Court is prepared to enter a Final Judgment for the named Plaintiffs under Fed.R.Civ.P. 54(b).").

I said the same thing in several different ways. In my discussion of issues affecting the claims administration process, I held: "[C]ompensatory damages to each dealer are mathematically derived from multiplying the cents per gallon damage award determined by the jury in the Special Verdict times the total number of gallons of motor fuel purchased by that dealer over the period of March 1, 1983, until August 29, 1994, as established by Exxon's Dealer Volume Database on a store level basis, less reductions, if any, required based on statute of limitation in Ohio, and Category-four releases in Delaware." *Id.*, 157 F.Supp.2d at 1308.[3] Furthermore, in discussing Exxon's argument that there was no basis to determine the amount of damages subject to each state's prejudgment interest rate, I held that: "[t]he record contains competent, substantial evidence upon which the jury's determination of a damage factor was based and upon which the jury could reasonably rely." *Id.*, 157 F.Supp.2d at 1313. I explained that when monetary relief is sought, and when data

from each class member is required to assess individual recovery entitlement, it is appropriate for the class representatives to develop and prove common guidelines or formulae that will apply to determine the measure of recovery for each individual proof of claim. I concluded that Plaintiffs' proof of aggregate monetary damages [based on a finding of cents per gallon] was feasible and appropriate under the unique and highly unusual circumstances. *Id.* at 1313–1314. I reiterated: "[T]he damage against which to apply each state's prejudgment interest rate is to be determined by multiplying the amount of the annual cents per gallon factor, as determined by the jury, by the volume of Exxon's sales to individual dealers in that state who submit verified claims, less any reductions by virtue of statute of limitations in Ohio and Category-4 Releases in Delaware". *Id.* at 1314. Accordingly, I clearly rejected Exxon's argument that each claimant must prove the amount, if any, Exxon actually overcharged the dealer through which the claimant is claiming and the amount the dealer was damaged by that overcharge.

## 2. Each Class Member's Entitlement to Prejudgment Interest.

Finding that the award of compensatory damages calculated in the manner as to every member of the Class was certain in amount, time, and location, I then ruled that compensatory damages were liquidated and awarded prejudgment interest in accordance with the law of each of the

**3.** I incorporated my prior rulings on releases as set forth in *Allapattah Servs., Inc. v. Exxon Corp.,* 188 F.R.D. 667 into my Order on Procedure for Determination and Entry of Final Judgment. *See Allapattah Services, Inc. v. Exxon Corp.,* 157 F.Supp.2d at 1308 n. 16. I held that only Category-four releases in Dela-

ware would be considered as a basis for adjustment during the claims administration process. *Id.* at 1308. I also held that general releases that were entered into during the period between "disclosure" and class certification may not be enforced. *Id.* at 1308 n. 16.

representative. To assure that my ruling was subject to review on appeal, prejudgment interest was computed on the compensatory damages awards in accordance with the relevant state law and included in the Rule 54(b) Final Judgment entered in favor of the named Plaintiffs.

If Exxon had any doubt about my intention as expressed in my earlier order, *Allapattah Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667, I again revisited my rulings in *Allapattah Services, Inc. v. Exxon Corp.*, 157 F.Supp.2d at 1311–1321.[4] I reaffirmed my prior rulings and held against Exxon on its restated contentions that the Plaintiffs were not entitled to prejudgment interest as a matter of right in any state because: (1) there is no basis to determine the amount of "damages" subject to each state's prejudgment interest; and (2) the Plaintiffs damages are not liquidated. To express the self-evident, I finally and comprehensively resolved the prejudgment interest issue against Exxon in eleven pages of the Order. Notwithstanding, it now appears as an affirmative defense in Exxon's answer to each dealers claim in the claims administration process.

### 3. The Limited Objections Available to Exxon in the Claims Process

In my Order on Procedure for Determination and Entry of Final Judgment, I concluded that Exxon had a limited right to participate in the claims administration process and to otherwise file objections. 157 F.Supp.2d at 1324. I stated that: "[S]uch objections or requests may pertain to: (i) filing set-offs, as addressed above; (ii) challenging whether the class member

was a dealer during the Class Period; (iii) challenging the time period the class member as a dealer during the Class Period; (iv) contesting the amount of gallons purchased by the class member during the Class Period on a yearly basis; (v) arguing the proper application of any applicable statute of limitations and release as a result of the Court's rulings; (vi) requiring a determination of 'Good Faith' amounts of claims for subject matter jurisdiction purposes under 28 U.S.C. § 1332, when necessary; and (vii) raising any purported miscalculation of compensatory damages and prejudgment interest for that class dealer." *Id.* The express language of item (iv), and the balance of the Order specifying the manner in which the amount of every class member's compensatory damages and prejudgment interest would be calculated, makes clear that my reference to Exxon's standing to object to damages and prejudgment interest was strictly limited to ensuring the mathematical correctness of the rate of interest and the mathematical correctness of the specified calculations. It certainly did not envision a procedure, as now advocated by Exxon, that it may challenge individual class member's recovery of damages as measured by the cents-per-gallon award of the jury verdict.

With regard to set-offs, I exercised my discretion to allow set-offs as a matter of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Id.* I did so on a very limited basis as it pertained to "unpaid motor fuel charges, unpaid rent, and the like." *See id.* at 1322. I was persuaded by Exxon's representations as to the limited number and kind of set-offs at issue. At no point did Exxon ever advise that it

---

4. In that order, I stated that I had addressed the matter of prejudgment interest to the extent practicable in *Allapattah Servs. Inc. v. Exxon Corp.*, 188 F.R.D. 667 (S.D.Fla.1999).

I reiterated my rulings in that decision and concluded against Exxon on all other issues as discussed above.

planned to assert over 5.000 set-offs against claimants for return of consideration paid for releases. I now conclude that Exxon knew, or must have known, about such a significant set-off given my earlier ruling on Releases, and the jury's verdict on fraudulent concealment. If the issue was raised, I would not have agreed, in my discretion, to exercise supplemental jurisdiction over that set-off.

The issue of set-offs was discussed at length at a status conference held on July 24, 2001. I posed the following question to Exxon's counsel:

THE COURT: As I understand from reading the papers—and maybe I am reading in between the lines—there are two categories of potential set-off claims. One would be, for instance, if a dealer had an outstanding fuel bill that was never paid in full for whatever reason, and then the other I saw alluded to is there are some rental amount that was due.

Are there other categories that you anticipate or are they just unknown at this point and you are sort of preserving your position?

July 24, 2001 Transcript, page 3. Counsel responded:

MR. STEWART: Like a lot of things in this case, Your Honor, there is not a clear yes or no answer to that question. There will be some fuel charges. We also anticipate that there will be some rent charges. Depending upon which dealers make claims, there may be other charges arising out of the relationship.

For example, Your Honor heard during the trial that they had other types of business activities going on within the stations, C stores, other types of operations, car washes, things of that nature.

There may be some charges associated with those activities, although, as you move further away from fuel, **I think that it is fair to say, at least we anticipate that the number of claims, set-offs, will diminish significantly in number.**

July 24, 2001 Transcript, page 4 (emphasis added).

.  .  .  .  .

MR. STEWART: Exxon tries, at the conclusion of each dealer's relationship, to get everything settled up, so we don't anticipate that there is going to be thousands of set-offs, as the plaintiffs have intimated in their papers, and **we anticipate that the number of different types of set-offs are going to be small in number.**

July 24, 2001 Transcript, page 4 (emphasis added).

.  .  .  .  .

MR. STEWART: Just one last point on the last point that your Honor made. I have already said this, but I want to underscore it because **I don't want the Court to think that we are dealing from our side, that we are dealing with an enormous number of claims and then for you to be surprised and have any kind of reaction by virtue of that surprise when there are not a huge number of claims by way of set-off.**

**We do not believe that there is going to be a huge number of claims that we can perceive at this point, and I don't think that is going to change in the future.**

July 24, 2001 Transcript, pages 17–18 (emphasis added).

4. **The District Court's Certification for Interlocutory Review and Entry of Rule 54(b) Final Judgment for the Named Plaintiffs.**

On several occasions, I expressed my desire to proceed in a way that would

allow the Eleventh Circuit to review the issues in this case as quickly as possible while allowing this Court to enter an appropriate form of judgment. Exxon acknowledged and agreed with this goal in its briefing [D.E. # 1416, page 23 n. 19, D.E. # 1445, pages 8–10]. In lieu of entry of a single, appealable final judgment for the entire Class as sought by Plaintiffs, Exxon proposed an alternative procedure "to present the issues in this case for immediate review by the Eleventh Circuit" while the claim process was being established and implemented. *See* Supplemental Memo. on Entry of Judgment at 8 [D.E. # 1445]. First, Exxon proposed entry of a Rule 54(b) final judgment in favor of the named Plaintiffs. Exxon maintained that because the claims of the named Plaintiffs were, by definition, typical of the claims of the entire class, **"an appeal from a Rule 54(b) final judgment will present the Eleventh Circuit with *all the issues applicable to the class."* [*Id.* at 9] (emphasis added). Exxon stated:

> *Moreover, an appeal from a judgment pursuant to Rule 54(b) will present the Eleventh Circuit with all of the issues applicable to the class. Thus, throughout this case, plaintiffs have argued, and the Court has agreed that the claims of the named plaintiffs are typical of the claims of the entire class, see Rule 23(a)(3), and that the question of law and fact applicable to the named plaintiffs are the same as the questions of law and fact applicable to the entire class, see Rule 23(a)(2) and 23(b)(3).*

[D.E. # 1445, page 9] (emphasis added).

Second, Exxon proposed that the Court enter an "interim judgment" on the jury verdict in order that the Court could certify the judgment, and all the issues raised in Exxon's Rule 50 and 59 motions, for

interlocutory review pursuant to 28 U.S.C. § 1292(b):

> Although not a Final Judgment, this Court could utilize the procedure in 28 U.S.C. § 1292(b) to authorize an immediate appeal. If the Court were disposed to enter such an Order, Exxon would file its Rule 50 and 59 motions so that, if denied, those rulings could be incorporated into the § 1292(b) order.

[D.E. # 1416, page 23 n. 19].

The parties' competing positions on the entry of an appealable judgment came before me on July 24, 2001. At the hearing, I clearly explained my intention to enter a ruling that would ensure all pending issues would be resolved with finality upon conclusion of an interim appeal:

> [M]y purpose is, in this order I am going to enter, to try to address and not punt on as many issues as I can to allow the parties a full right to make their arguments to the Eleventh Circuit, however they may evolve. So, I am trying to be as inclusive here and not just reserve it for another day **because the last thing I would like to see is, you know, assuming the procedure goes forward as you have envisioned it, Mr. Stewart, further appeals in the future, based upon the final judgment** when these are new questions. So, I would rather address as many issues as I can for both parties on the issue.

July 24, 2001 Transcript at 9 (emphasis added).

In response to Plaintiffs' complaints that Exxon's proposals would result in a "judicial train wreck" in which Exxon could potentially appeal 10,000 separate final judgments to the Eleventh Circuit, Exxon's counsel assured this Court that this would not be the case, because a final

judgment entered in favor of the named Plaintiffs would present all the issues in the case to the Eleventh Circuit, whose ruling would thereby bind the entire class:

> I want to make clear because this is another one of those boogeyman arguments about these thousands and thousands of final judgments. **I think that all of the issues in this case go up if there is a judgment on the main plaintiffs** because they have taken the position in the papers that are filed in front of Your Honor on this last round of briefing that no individual plaintiff can prove a case unless they went through all of the proofs that had to be brought before Your Honor.
>
> They have made that clear that is their position, that for even one dealer to prove this case, they would have to go through everything that was in front of the Court in this trial.
>
> **So, that takes up all of the issues that were involved as far as the trial is concerned.**

[*Id.* at 33]. In response to this Court's question as to whether review of the Rule 54(b) final judgment could proceed in tandem with a § 1292(b) certification, Exxon's counsel stated:

> Yes, sir, *and that is what we would like to see happen so that we have the greatest opportunity to get all these issues up there and the issues resolved* as far as the case is concerned.

[*Id.* at 34] (emphasis added). When Plaintiffs' counsel responded that Exxon had no incentive to expeditiously resolve individual claims in the claims process because its internal rate of return on the monies it took from the dealers was double the state law prejudgment interest rates, Exxon's counsel responded:

> Every time we have an argument, we hear we are trying to delay this process. . . . So I think it is totally unfair to have these delay arguments thrown up as an excuse to overlook, in essence, the law on these points.

[*Id.* at 46].

In order to achieve interlocutory review on all the issues determined by the jury verdict, my Final Order on Procedure, the Rule 50 Order, the Interim Judgment, the Rule 54(b) Final Judgment, and my prior order on releases, I certified all of the rulings for review pursuant to 28 U.S.C. § 1292(b):

> An immediate appeal from this Order, together with the judgment on Special Verdict entered in accordance herewith, will materially advance the ultimate termination of the litigation by giving direction to the forthcoming claims administration process, thereby avoiding significant lost time and unnecessary expense if the legal conclusions set forth in this Order are ultimately reversed.
>
> *Finally, while appeal of this order is interlocutory, this Court urges the Eleventh Circuit Court of Appeals to consider all legal issues directed to the Judgment on Special Verdict, which this Court has directed the Clerk of the Court to enter, as part of its pendent appellate jurisdiction.* This Court and the parties will greatly benefit from the Eleventh Circuit's review and early determination of the myriad of legal issues associated with this case before untold additional attorney's fees and costs are incurred in reaching a Final Judgment for both the named and putative class members.

157 F.Supp.2d at 1327 (emphasis added).

Adopting Exxon's recommendation, I further clarified my intent regarding appellate review so that **both** the Class Dealers and Exxon would be able to raise any

and all issues for resolution by the Eleventh Circuit Court of Appeals. I stated:

> By this Order, the Court has endeavored to decide all issues posed by the parties and also to approve the form of the judgment to be entered on the Special Verdict in accordance with Fed. R.Civ.P. 58. Although not a final judgment, the Court shall utilize the procedures in 28 U.S.C. § 1292(b) to authorize an interlocutory appeal. For this reason, the Court has ordered Exxon to file its Rule 50 and 59 motions so that, if denied, those rulings could be considered as part of the § 1292(b) review.

157 F.Supp.2d at 1296.

. . . . .

In addition, the Court, by this Order, shall rule on all remaining outstanding issues affecting the claims administration process and request the Eleventh Circuit to review these matters before such an administration process is implemented.

157 F.Supp.2d at 1308

. . . . .

As an alternative means of bringing the issues associated with this case to the attention of the Eleventh Circuit as soon as possible, the Court is prepared to enter a Final Judgment for the named Plaintiffs under Fed.R.C.P. 54(b). Such a final judgment will not prejudice the claims of the remaining class members and will also allow an immediate full appeal on the merits while the claims administration process for the balance of the class is being established and implemented, and the appellate process is initiated pursuant to 28 U.S.C. § 1292(b).

157 F.Supp.2d at 1324 n. 32.

## C. Exxon Appeals the Issues Now Raised in the Claims Process

Pursuant to this Court's certification and consistent with its representations that it would seek review of all issues resolved below, Exxon sought interlocutory review under § 1292(b) and also appealed the Rule 54(b) final judgment. The Eleventh Circuit granted review under § 1292(b), which entitled it to review all issues in the case, *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1365 (11th Cir.1997), and consolidated the interlocutory appeal with Exxon's appeal of the Rule 54(b) Final Judgment.

In its consolidated brief on appeal, Exxon sought review of all issues arising in connection with class certification, pre-trial rulings, the trial, the jury's special verdict, and the District Court's related post-trial rulings. Among at least 7 other major points of error advanced, Exxon specifically urged reversal on the following grounds:

(1) that the District Court erred in establishing the cent-per-gallon damage award of the jury verdict as the damage factor for the determination of the compensatory damages of the named Plaintiffs and individual class members in the claims process because the jury had not found that the named Plaintiffs or any individual dealer was in fact damaged [Brief at 62 (App.-K, D.E. # 1875 (excerpt)) ];

(2) that the District Court erred in awarding prejudgment interest to the named Plaintiffs and to class members in the claims process based on the damages computed using the cents per gallon jury verdict [*Id.* at 63];

(3) that the District Court erred in ruling that Exxon's form release was invalid based upon the jury's determination that Exxon fraudulently concealed its breach [*Id.* at 46]. In appealing this ruling, Exxon's initial brief mistakenly asserted that the District Court had not made the al-

ternative ruling that the release contained an exception for the claims brought in this case. [*Id.*]. Exxon belatedly sought review of this alternative ground in its reply brief. [Reply Brief at 46–47, App.-L, D.E. # 1875 (excerpt)];

(4) that the District Court erred in certifying the case and trying damages on a class-wide basis [App.-K at 79–80, D.E. # 1875].

### D. The Eleventh Circuit Affirms the District Court on All Issues Raised in Exxon's Appeal

In its preliminary introduction, the Eleventh Circuit acknowledged the full scope of the issues before it both in terms of the final judgment for the named plaintiffs and the interlocutory appeal. It stated:

After entering a final judgment for the class representatives and denying the dealers' motion for the entry of a class-wide judgment, the district court certified the following two questions for interlocutory appeal: (1) whether it properly exercised supplemental jurisdiction over class members whose claims did not meet the jurisdictional minimum amount in controversy requirement; and (2) whether an aggregate compensatory and prejudgment interest award could be entered for the class before the claims administration process. Additionally, the court urged us to consider all of the legal issues raised by both parties relating to the disposition of the case. Thus, we also consider (1) whether Exxon is entitled to participate in the claims administration process; (2) whether Exxon may assert set-off claims against the dealers; (3) whether the district court abused its discretion by certifying the class; (4) whether the court

erred when it admitted extrinsic evidence to supplement the Dealer Sales Agreements (dealer agreements); (5) whether the dealers' claims were barred by the statutes of limitations; and (6) whether the court abused its discretion by allowing the dealers' expert witness to testify at trial. **We find no reversible error and accordingly affirm.**

*Allapattah Services, Inc. v. Exxon Corp.,* 333 F.3d 1248, 1251–1252 (11th Cir.2003) (emphasis added).

Thus, the Eleventh Circuit's panel opinion opens with broad language affirming this Court's prior rulings. The last paragraph ends with similar catch-all language with respect to all issues raised by the parties: *"With respect to each of the remaining issues raised by the parties, we find no reversible error. Accordingly, we AFFIRM."* [*Id.* at 1264] (emphasis added). The Eleventh Circuit, therefore, rejected all of Exxon's arguments on appeal, and by its opinion affirmed the jury's Special Verdict, the Order on Procedure, the Rule 50 Order, the Interim Judgment, the Rule 54(b) Final Judgment and the Court's order regarding releases in their entirety.

The balance of the Eleventh Circuit's opinion confirms this conclusion, giving brief attention to the issues Exxon is now attempting to re-litigate. For example, the Eleventh Circuit relegates Exxon's arguments challenging the jury's verdict and the methodology for calculating damages and prejudgment interest as set forth in the Order on Procedure to a short footnote addressing the propriety of the Rule 54(b) Final Judgment in favor of the named Plaintiffs:

Exxon also argues that it was inappropriate for the district court to enter individual final judgments for each of

the named class representatives, because no reasonable jury could have found that Exxon breached its obligations under the dealer agreements. Exxon's argument, however, is little more than an attack on all the factual findings made by the jury. As we find that the jury's verdict was supported by substantial evidence, we find that Exxon's argument is without merit.

[*Id.* at 1256 n. 8]. The Eleventh Circuit's affirmance of "all factual findings made by the jury" affirms the jury's determination of Exxon's liability to all dealers as well as the quantum of damages, expressed in cents per gallon, suffered by all dealers. Moreover, as Exxon itself advanced to this Court prior to its appeal, because the methodology for the calculation of the named Plaintiffs' compensatory damages and prejudgment interest awards is, by definition, typical of the Class, this ruling necessarily affirms that methodology, specified in the Order on Procedure, as to all dealers.

The Eleventh Circuit's opinion further emphasizes its affirmance of this Court's specific rulings concerning the methodology for calculation of individual dealer damages and prejudgment interest in the claims process as specified in the Order on Procedure. It stated: "[W]e agree with the district court that *the determination of the amount* that each dealer was overcharged during that class period must take place on an individual basis, taking into account the amount of compensatory damages to which each dealer is entitled" and "we further find that the district court did not err in ... devising an appropriate procedure for the administration of each dealer's claim." [*Id.* at 1257, 1264] (emphasis added). While not mentioning prejudgment interest directly in this paragraph, the Eleventh Circuit previously recognized the difficulties of entering an aggregate judgment because of "the difficulty of awarding prejudgment interest on

a class-wide basis when the applicable amount of interest varies from state to state." *Id.* at 1257. In that Exxon raised the award of prejudgment interest as a ground for error in its main brief, and the Eleventh Circuit found "no reversible error," it affirmed with respect to this issue as well.

With respect to Exxon's release defense, in yet another footnote, the Eleventh Circuit addressed the argument raised by Exxon in its initial brief and affirmed this Court's determination that the Releases were voidable by virtue of Exxon's fraudulent concealment. *Id.* at 1263 n. 18. The Eleventh Circuit opinion also implicitly affirmed this Court's alternative ruling by adopting the District Court's finding that only Category -four Delaware Releases are effective, and ultimately concluding that: "With respect to each of the remaining issues raised by the parties, we find no reversible error." *Id.* at 1264. While not discussed by the Eleventh Circuit, this reference necessarily includes Exxon's claim, in its reply brief, that the alternative ruling that the Releases contained in exception for the claims brought in this case was erroneous and subject to reversal.

With respect to Exxon's right to assert set-offs in the claim process, the Eleventh Circuit affirmed its entitlement, holding that it was "purely discretionary" for the district court to allow such claims. *Id.* at 1259 n. 14. It stated specifically: "Thus, the district court had discretion to decide whether Exxon should be allowed to assert set-off claims against the dealers." *Id.*

**E. Exxon's Petitions for Further Review to the Eleventh Circuit En Banc and the United States Supreme Court Recognize that the Panel Opinion Disposed of its Arguments on Damages and Interest**

In its petition for rehearing and rehearing *en banc,* Exxon did not suggest that

the panel opinion had failed to affirm the jury verdict or the District Court's post-judgment orders and judgments in all respects. To the contrary, Exxon's petition recited that the panel had improperly affirmed the district court's orders that "applied the jury verdict on liability to all members of the class, entered final judgment in favor of 10 named plaintiffs on the basis of an 'on average' damage figure, prescribed a procedure for resolving damage claims for other class members, and certified multiple questions for appeal." [Rehearing Petition at 5–6 (App.-N), D.E. # 1875].

Exxon's rehearing petition also complained that under the panel opinion, "each dealer is now entitled to recover compensatory damages without proof that the prices he paid were too high" [*Id.* at 2], and that the panel opinion affirmed use of a "single jury verdict form that required 'all or nothing' answers applicable to the class 'as a whole'" [*Id.* at 11].

After its petition for rehearing *en banc* was denied, Exxon sought certiorari review from the Supreme Court on the issues of class certification and subject matter jurisdiction over the lesser claimants. In connection with the issue of class certification, Exxon continued to complain that this Court and the Eleventh Circuit had improperly allowed Plaintiffs to prove Exxon's liability and class members' damages on a class-wide basis. [Certiorari Petition at 23 (App.-O (excerpt)), D.E. # 1875].

The Supreme Court granted certiorari limited to the issue of supplemental jurisdiction, thereby denying review of class certification. Thereafter, the Eleventh Circuit immediately issued its mandate. [App.-P, D.E. # 1875]. Notwithstanding the Supreme Court's denial of review of certification issues, Exxon continued to advance arguments concerning those issues in its merits brief, including the argument that the class definition, affirmed by the Eleventh Circuit, had improperly allowed Plaintiffs to compute the amount of damages suffered by individual dealers with aggregated, national data. [Merits Brief at 13, 41–42 (App.-Q), D.E. # 1875]. Exxon's merits brief to the United States Supreme Court also expressly recited that the Eleventh Circuit's panel opinion affirmed the District Court's Order on Procedure. [*Id.* at 7].

## F. The District Court Appoints Special Master Scott and Warns Exxon Not to Assert Frivolous Arguments in the Claims Administration Process

After the Supreme Court denied Exxon's petition for certiorari on the issue of class certification and the Eleventh Circuit issued its mandate [filed June 11, 2003], this Court proceeded to appoint former U.S. District Judge Thomas Scott as Special Master responsible for the determination of individual class member claims in the claim process. The order of appointment directs the Special Master to proceed in accordance with the provisions of the Order on Procedure. [D.E. # 1759].

When the lawyers for the parties met to prepare to meet with Special Master Scott for the first time to discuss implementation of the claims administration process, Exxon's new lawyers indicated that they intended to contest individual class members' entitlement to prejudgment interest. When Class counsel subsequently advised this Court that it appeared that Exxon intended to re-litigate issues it had already lost on appeal, I issued a stern warning in open court that I would not countenance

the assertion of frivolous arguments by Exxon that would delay the claims process:

> THE COURT: Let me just say I don't understand yet what the issues are but I am going to closely observe them. **If there are issues raised by Exxon that I consider to be frivolous and improper that already have been resolved or committed to by prior statements of the company through their counsel, I frankly will impose § 11 fees.**
>
> **It's not going to be a free ride on Exxon to do whatever it wishes. I'm not saying that it will, but I want the ground rules to be laid out clearly that I'm going to hold the parties to prior representations and prior rulings and I'm not going to get into the reconsideration of prejudgment interest.**
>
> That's been resolved as far as I'm concerned. You may reserve, of course, for any appeal to the Eleventh Circuit of a final judgment, but no way are we going to get into the issues of prejudgment interest as part of the application process.[5]
>
> The only question is what very limited issues were reserved for Exxon to dispute and those were crafted carefully, so I'm putting Exxon on notice. There has been some kind of allegations of what's ahead and I don't know that they are fair allegations or appropriate allegations, **but if I find frivolous activities here on the part of Exxon in this claims process, there's another ground for fees here and that's Rule 11 sanctions fees. Hear me clearly.**

[January 27, 2005 Transcript, pages 10–11 (emphasis added)].

When Exxon's counsel complained that Exxon was being maligned for something it had not done, I responded as follows:

> THE COURT: All right, sir. With regard to that issue, I am not prejudging any matter relating to Exxon's position which will be filed on March 1st. All of my statements relative to their position are already in orders. I hope that those orders are sufficiently clear and will be followed.
>
> **I'm just giving a framework for consideration that from what I have seen, I've seen some matters being presented here by Exxon that are frivolous matters with respect to some of these filings, I will treat them with great consideration and consider whether appropriate sanctions are there. I'm not trying to chill your efforts but I'm trying to put it in a framework where you understand what's on the table.**
>
> **I don't know where you are and what your position is but I am very concerned that we move ahead with a process that has a resolution and not undue or frivolous delay. I think that's all I want to say about that issue.**

[*Id.* at 42–43] (emphasis added).

## G. Exxon Files with Class Counsel and the Special Master 9,000 Answers and Position Statements on Damages, Prejudgment Interest and Set–Offs.

On February 14, 2005, Plaintiffs moved before the Special Master to review Exx-

---

**5.** Exxon argued at oral argument that my reference to its right to take appeals from final judgment somehow empowered it to reargue matters already determined. This is totally incorrect. My reference was to Exxon's right to appeal a final judgment with regard to any new matters that arise, such as the amount of prejudgment interest awarded under the laws of the State at issue.

on's answers to claims be served on Class counsel and not yet served on members of the Class [D.E. # 1816]. By this procedure, Class counsel argued that it will allow the Court and Class counsel to ensure that Exxon has asserted only those limited defenses and objections authorized by the Court. By agreed order issued on February 25, 2005, Class counsel's motion was granted, subject to Class counsel having thirty days from receipt of the answers to review them, and, if necessary, request the Special Master's intervention before the answers were filed and served on members of the Class [D.E. # 1834]. Thereafter, Exxon filed with the Special Master its Notice of Filing Exemplar of Defenses [D.E. # 1892], and, per the direction of the Special Master, also filed position papers and presented argument explaining the positions it has taken and the defenses it has asserted. Its position papers were on the calculation of damages and prejudgment interest [D.E. # 1841], on set-off and release defenses [D.E. # 1843], and on the process for adjudicating claims by Exxon Corporation [D.E. # 1850].

In its Exemplar, Exxon listed fifty-two potential affirmative defenses.[6] It is significant to note that Exxon did not admit **in any** of the 8,912 answers that it owed one dollar to any claimant, even in those claims as to which it otherwise admits the identity of the claimant as a dealer and the time periods in which the claimant operat-

ed an Exxon service station. Leaving aside issues it wished to reserve for further appeal, Exxon defenses ranged from the most trivial of objections (e.g. for misspellings and omitted middle initials)[7] to the assertion, without a stated factual basis, in each answer that every claim "does not invoke a good faith amount in controversy in excess of $50,000." Exxon asserts in every claim as an affirmative defense that the claim may belong to another person without identifying the alternative owner or the good faith basis for this defense. In connection with its set-off-from-voidable-release claim, Exxon's answers even reference a demand for costs and statutory attorney's fees under the laws of the States of Texas, Arizona, and Arkansas regardless of the claimant's store location.

It is apparent to this Court that the form of Exxon's answer is intentionally structured to confuse, obstruct and delay the expeditious determination of claims. Instead of clearly stating whether Exxon is objecting to the claim and on what grounds, Exxon's answers are formatted to intentionally create the appearance that Exxon denies the validity of every claim. But, this is not all.

In addition, in its position papers, Exxon, through a team of "new" lawyers, purposefully attempted to lead the Special Master, who is new to these proceedings, into error by advocating arguments that it lost at trial and on appeal, asserting: (1)

---

**6.** Plaintiffs have filed its "Notice of Filing Supplemental List of Defenses and Examples of Answers" [D.E. # 1916] including affirmative defenses numbers 52 through 60.

**7.** Exxon assets that individual claims should be denied based upon trivial and immaterial alleged deficiencies in the completion of claims forms. The most egregious examples include: (1) the omission or alternatively, in-

clusion, of an individual dealer's middle initial; (2) the omission of an ampersand from a corporate name; (3) the use of the abbreviation "Corp." for the "corporation;" (4) the addition of an omitted region code by amendment to an otherwise correct store number, and (5) the filing of claims for three stores owned by one dealer on a single claim form instead of three claims forms.

the Eleventh Circuit has not approved the method that the district court used to calculated individual damages and prejudgment interest, and (2) the "on average" price reduction does not allow calculation of individual damages and prejudgment interest. It also advocated a new set-off included in over 5,000 answers that it is entitled to the return of consideration for any release voided by a class member.[8] By way of illustration, while Exxon's new counsel gives lip service to this Court's prior rulings, they spend countless pages rearguing reasons why this Court was **wrong** in its orders and stating that "... implementation of the District Court's ruling regarding damages and prejudgment interest will result in judgments that must be reversed on appeal for the reasons set forth in Part II of this memorandum" [D.E. # 1841, page 26].

Otherwise stated, Exxon advocates, as if there has never been a trial and final appellate review, that **every dealer** must individually prove whether it was damaged and how much, that no dealer's damage claim is liquidated, and that no dealer is entitled to prejudgment interest. Exxon even claims that the Eleventh Circuit failed to review the jury verdict ("Exxon did challenge the jury verdict in the Eleventh Circuit but the Eleventh Circuit did not necessarily review that challenge"), and if it did, its ruling was clearly erroneous [D.E. # 1841, at 22–23 n. 22].[9] It argues: "[T]hus, even if the Eleventh Circuit's decision were regarded as necessarily approving the District Court's rulings regarding calculation of individual damages, entitlement to and calculation of prejudgment interest, **that implicit ruling need not be followed because it is clearly erroneous.**" *Id.* at 23 (emphasis added).

At a hearing held before the Special Master on March 31, 2005, Exxon engaged in "double speak" by, on one hand, stating that it was not arguing with this Court's and the Eleventh Circuit's rulings, while, on the other hand, proceeding to do just

---

**8.** In its filing of Exemplar of Defenses, Exxon states in each of the 8,912 answers submitted to Class counsel [the remaining answers to be submitted by May 15, 2005], that it would include the following affirmative defenses. all of which are blatantly contrary to this Court's prior orders and the Eleventh Circuits opinion: (1) "An award of damages to the claimant based in whole or in part on multiplying the number of motor fuel purchased by a dealer from Exxon by the cents per gallon that the jury found Exxon should have reduced on average the wholesale price of a gallon of motor fuel would deny Exxon due process of law because that calculation does not reflect either an amount that Exxon overcharged a dealer or the damages that the claimant is entitled to recover. Each claimant must prove the amount, if any, that Exxon actually overcharged the dealer through which the claimant is claiming and the amount that the dealer was damaged by that overcharged. *See Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1257 (11th Cir.

2003), *review granted,* —— U.S. ——, 125 S.Ct. 317, —— L.Ed.2d —— (2004)."; (2) "The damages claimed were not liquidated as of a date certain prior to entry of the judgment and therefore the claimant is not entitled to prejudgment interest;" (3) "The claim is barred by a valid release;" and (4) "The claim is barred by a voidable release". In over 5000 of its answers, it raises a set-off which was never previously discussed, namely, that "if the Court finds that the release has been avoided by the filing of this claim, the claimant is liable to Exxon for the consideration paid by Exxon for the release."

**9.** Exxon also asserts the Eleventh Circuit reversed this Court's alternative ruling on the releases by not discussing it. [D.E. # 1843 at 10.]. Ignoring this Court's prior ruling that Exxon's set-off defenses are, by definition, permissive, Exxon now argues that the set-offs are compulsory counterclaims. [*Id.* at 16].

that in hope of convincing the Special Master to allow Exxon to proceed in the manner set forth in its position papers:

MR. JULIAN:

I think that, as he have indicated in the paper, we understand what Judge Gold's rulings are. We don't intent to argue with Judge Gold about his rulings, but we don't agree with the plaintiffs' counsel on whether the Eleventh Circuit has affirmed many of the rulings, and many of the rulings that he made after the verdict was entered were certified to the Eleventh Circuit pursuant to section 1292(b). The Eleventh Circuit selected some of the issues to rule upon. It chose not to rule upon some of the other issues, and so we don't have any law of the case with respect to really a variety of very important rulings that Judge Gold made, and that's why we are continuing to assert affirmative defenses, notwithstanding that there has already been a ruling by the district court as to certain of the defenses and to other issues such as the method of calculation of damages; but I think we can identify those where Judge Gold has ruled, and I think that the—your appropriate role, as we have indicated, is to continue to uphold Judge Gold's rulings. **Although we disagree with his rulings, I don't think that we have any authority but to implement his orders, although our positions on those rulings, I think, are things that should be taken into consideration here, and I want to emphasize that we think that they very much have merit.**

Transcript, March 31, 2005, pages 10 and 11.[10]

### H. Plaintiffs File for Emergency Relief

The Plaintiffs' filed the subject motion referring to Exxon's stance as "shocking" [D.E. # 187, page 27], by wanting to "start over" and claiming that it is yet to be determined whether any dealer was in fact overcharged. Plaintiffs argue that Exxon's "blatant effort to delay payment of monies it owes makes a mockery of the judicial process and warrants immediate imposition of sanctions sufficient to overcome Exxon's bad faith and dilatory conduct" *Id.*, and, that "Exxon's assertion of legally and factually frivolous denials, defenses and demands for attorney's fees and costs, and the confusing manner in which the answers are constructed, is intended to chill individual class members participation in the claims administration process by creating the false appearance that their claims are invalid or deficient, and that pursuing the claim will enmesh the claimant in a difficult and protracted legal dispute with the outcome in question." *Id.* at 7.

In its response, Exxon first argues that this Court should refer the Emergency Motion to the Special Master for a Report and Recommendation, even though it acknowledges that any such report would ultimately have to be addressed by this Court [D.E. # 1899, page 8]. Exxon next argues that it has only raised defenses that it is "entitled" to raise in order to preserve

---

**10.** Exxon's claim that it is merely preserving issues for appeal stands in sharp contract to other positions Exxon has urged upon the Special Master and this Court. Plaintiffs cite to fifteen instances from Exxon's position papers which are inconsistent with Exxon's pos-

ture that it merely raised these matters for further appeal. Exxon's positions are aptly summarized in Plaintiff's Reply In Support of Emergency Motion to Strike Exxon's Answers and Affirmative Defenses and for Sanctions [D.E. # 1912, pages 11–13].

them for appellate review after entry of a "final judgment" for each claimant, and that it has not taken any position that warrants judicial estoppel or revocation of prior orders. It concludes that the request for sanctions is inappropriate.

Upon review of Exxon's arguments, and its positions taken at oral argument, I conclude that Exxon has in bad faith attempted to make a "judicial train wreck" of the claims administration process despite my clear warning. But, equally important, the totality of Exxon's actions reveals a cynical plan to prolong this litigation which has endured more than thirteen years, by pursuing the very appeals Exxon stipulated that it would not pursue when urging this Court to delay entry of final judgment following the jury's verdict over four years ago. Exxon pleads with this Court not to impose sanctions that would chill its ability to preserve its appellate rights. Exxon has it wrong. It is not entitled to a "do over." It is not entitled to further appeals on issues already decided. The sanctions that must be imposed are those that will do precisely that-chill Exxon's blatant disregard of an orderly judicial process—otherwise Exxon will be rewarded for continuing to successfully delay payment of the money its owes to the Class members.

## II. THE COURT EXERCISES ITS AUTHORITY TO HEAR PLAINTIFFS' EMERGENCY MOTION.

I complement the Special Master on an excellent job. While the Special Master has been diligent in holding hearings with the parties, and receiving memoranda on legal issues, I conclude that it is necessary for this Court, at this juncture, to assume direct jurisdiction over certain aspects of the claims administration process in order to control the integrity of the judicial process and the conduct of the parties before the Court. By doing so, I shall provide direction and guidance to the Special Master and the parties, and, thereby, avoid long delays through potential objections and appeals which ultimately I have will have to resolve in any event. I emphasize that I am not assuming jurisdiction over all issues; just those which are addressed in this Order. The remaining issues not discussed may be decided by the Special Master in a manner not inconsistent with this Order.

## III. THE RULINGS OF THE DISTRICT COURT AFFIRMED BY THE ELEVENTH CIRCUIT ARE GOVERNED BY THE MANDATE RULE AND THE LAW OF THE CASE DOCTRINE AND MAY NOT BE RE–LITIGATED DURING THE CLAIMS ADMINISTRATION PROCESS.

Each of Exxon's legal arguments on its reargued affirmative defenses runs headlong into the "mandate rule." The mandate rule requires a district court to strictly comply with the terms of a circuit court's opinion when a case is remanded. *E.g., Pelletier v. Zweifel,* 987 F.2d 716, 718 (11th Cir.) (collecting citations), *cert. denied,* 510 U.S. 918, 114 S.Ct. 311, 126 L.Ed.2d 258 (1993). The district court must implement both the letter and spirit of the mandate, taking into consideration the Eleventh Circuit's opinion and the circumstances it embraces. *United States v. Mesa,* 247 F.3d 1165, 1171 (11th Cir.2001). The rule is derived from the law of the case doctrine, which "operates to create efficiency, finality, and obedience within the judicial system." *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506,

1511 (11th Cir.1987) (en banc), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988). A district court may reconsider matters once decided under the following limited exceptions to the mandate rule: (1) new and substantially different evidence is presented in a subsequent trial; (2) there is an intervening change of controlling authority on the issue in question; or (3) the prior decision was clearly erroneous and would work manifest injustice. *Heathcoat v. Potts,* 905 F.2d 367, 370 (11th Cir.1990) (citations omitted).

■■■ The law of the case is established not only by what the Eleventh Circuit decides expressly, but by what it decides by necessary implication. *DeLong Equipment v. Washington Mills Electro Min.,* 990 F.2d 1186, 1197 (11th Cir.1993) ("[A] decision of the Court of Appeals at an earlier stage of the same case represents the law of the case not only as to matters 'decided explicitly' but also as those 'decided by necessary implication.'") (citations omitted), *modified on other grounds,* 997 F.2d 1340 (11th Cir.1993). But the law of the case doctrine is not limited only to those matters expressly and necessarily decided. Under the law of the case doctrine, "a legal decision made at one stage of the litigation unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *United States v. Escobar–Urrego,* 110 F.3d 1556, 1561 (11th Cir.1997) (quoting *Williamsburg Wax Museum v. Historic Figures,* 810 F.2d 243, 250 (D.C.Cir.1987)). Thus, if a matter is omitted from one appeal, it may be held foreclosed, under the "two bites of the appellate appeal rule," on a later appeal to the same court

as a matter of law of the case. *Id.* (citing cases). Accordingly, Exxon cannot now raise matters which it did not previously appeal as grounds for error to the Eleventh Circuit.

■■■ In its Response to Plaintiffs' Emergency Motion, Exxon argues that the Eleventh Circuit did not explicitly discuss each of the points it raised in its appellate brief. This Court will not presume that the Circuit panel completely disregarded an argument specifically raised on appeal. From the entire context of the opinion, its conclusion that the district court did not commit reversible error, and its affirmance with respect to each of the "remaining issues raised by the parties," one must presume that the Eleventh Circuit considered Exxon's unaddressed arguments so lacking in merit as to be unworthy of discussion. The fact of the matter is that there is "no requirement in law that a federal appellate court's decision be accompanied by a written opinion" at all, let alone one which discusses at length every argument raised, no matter how frivolous. *Furman v. United States,* 720 F.2d 263, 264 (2d. Cir.1983) (rejecting contention that its prior summary affirmance of petitioner's conviction which addressed some but not all of petitioner's claims, gave less than adequate consideration to the claims raised on appeal). As stated in *Furman,* "[i]n each case, the [appellate] Court's ruling is issued after due consideration of the merits of the appeal, and the judgment entered determines, either explicitly or implicitly, all issues raised in the appeal." *Id.* at 266.

Exxon's position that it has the right to appeal again those issues which were not directly addressed is astounding after taking into consideration the entirety of the opinion and the circumstances its em-

braces. Exxon's position is not only contrary to fundamental appellate law, but it is plainly contrary to any clear reading of the panel's opinion.

Exxon, for instance, claims that the Eleventh Circuit did not review the Rule 54(b) Final Judgment **at all** because the issue was not listed in the first paragraph of the opinion identifying what Exxon says are the "sole" issues the Eleventh Circuit "had agreed to address" [Exxon's Response at 18–19, D.E. # 1899]. Its position ignores that, in the introductory paragraph, the Eleventh Circuit made it clear that it was not oblivious to the Final Judgment when it stated: "[A]fter entering a **final judgment for the class representatives** and denying the dealer's motion for the entry of a class-wide judgment, the district court certified the following two issues for interlocutory appeal ...." 333 F.3d 1248, 1251 (emphasis added).

Exxon also ignores that the Eleventh Circuit expressly rejected its argument that "it was inappropriate for the district court to enter **individual final judgments for each of the named class representatives,** because no reasonable jury could have found that Exxon breached its obligations under the dealers agreements." 333 F.3d at 1256 n. 8 (emphasis added). By necessary implication, the Eleventh Circuit is stating that it was not wrong for the district court to enter individual final judgments for each of the named class representatives based on the same methodology to be applied for the putative class members. The Eleventh Circuit expressly endorsed this Court's Order on Procedure which established the claims process that would employ the very same methodology for calculating damages and prejudgment interest for every class member. 333 F.3d at 1248. The panel's express affirmation on this very issue was not lost on Exxon, which sought rehearing or rehearing *en banc* and Supreme Court review on this ruling complaining: "Each dealer is now entitled to recover compensatory damages without proof that the prices he paid were too high" [App. N to Plaintiffs' Appendix in Support of Emergency Motion, D.E. # 1875]. In light of Exxon's express recognition of the panel's approval of the damages and interest methodology set forth in the Order on Procedure, Exxon simply engages in bad faith in rearguing now that this issue was never addressed and decided.

■ Alternatively, Exxon argues that it is permitted to revisit these issues under the exception to the law of the case doctrine that this Court and the Eleventh Circuit may consider again previously decided issues when the earlier ruling was clearly erroneous and would work a manifest injustice if implemented. The Eleventh Circuit has made it clear that this limited exception must be rarely used and applies only to legal errors when the legal error is beyond the scope of reasonable debate. It stated, in *Jenkins Brick Company v. Bremer,* 321 F.3d 1366 (11th Cir. 2003):

> In *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Supreme Court described the law-of-the-case doctrine, and the doctrine's most significant exception, as follows:
>
> > A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Id.* at 817, 108 S.Ct. at 2178 (citations omitted).

The use of the phrase "clearly erroneous" is perhaps unfortunate, because those words are typically used to describe the standard of review employed by an appellate court when reviewing a trial court's factual findings. The law-of-the-case doctrine, however, concerns the application of the same legal conclusion by various courts throughout the entire litigation. Indeed, the Court made clear that the "clear error" exception to the law-of-the-case doctrine applies to legal errors. In the same paragraph as the language quoted above, for example, the Court held that once the Seventh Circuit concluded that the prior jurisdictional decision by the Federal Circuit was "clearly wrong," it was "obliged to decline jurisdiction." *Id.*

**Courts must rarely invoke the "clear error" exception, less the exception swallow the rule. With this principle in mind, the exception can be restated this way: in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling.**

321 F.3d at 1370–71 (emphasis added).

Applying these standards, I conclude after consideration of Exxon's arguments that neither my rulings, nor those of the Eleventh Circuit, are clearly erroneous or work a manifest injustice in that none of these rulings are based on legal error beyond the scope of reasonable debate. Exxon needs to use due care in arguing that it falls under this exception. The exception does not pose an invitation to engage in never ending argument. It is reserved for the most "cogent of reasons" in order to preserve the integrity of the judicial process. I conclude that Exxon's egregious arguments, coupled with its cynical efforts to chill claimant's legitimate rights, constitutes a bad faith abuse of this limited right, for which sanctions are required. This is even more apparent when, under the facts and circumstances of this case, the application of judicial estoppel is warranted, and, as such, Exxon is precluded from using individual putative dealer judgments as a vehicle for arguing, or rearguing, substantive issues that were raised, or could have been raised, before the Eleventh Circuit.[11]

## IV. EXXON IS JUDICIALLY ESTOPPED FROM TAKING INCONSISTENT POSITIONS REGARDING APPEALS AND SET–OFFS

■ The Plaintiffs contend that Exxon is judicially estopped from taking a position contrary to its prior commitment to this Court that the interlocutory review process it advanced would serve to resolve all issues appealed with finality, and in advancing a new set-off affecting over

---

11. Exxon also argues that it is entitled to seek Supreme Court review of rulings of this Court and the Eleventh Circuit after entry of a final judgment, citing *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 508 & n. 1, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) ("there is no question that ... we have authority to consider questions determined in earlier stages of litigation where certiorari is sought from the most recent of the judgments of the Court of Appeals"). Exxon ignores that a final judgment has been entered as to the named plaintiffs, and it already has sought and was denied certiorari review of the merits of this case. Exxon's right to seek review in the Supreme Court on issues decided by the Eleventh Circuit has already been exhausted.

5,000 claimants that was never disclosed. I concur with Plaintiffs' contentions.

The Supreme Court has held that "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him". *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). Applying a flexible standard to the judicial estoppel doctrine, the Supreme Court set forth three factors to inform a court as to when it should be applied. First, a party's later position must be "clearly inconsistent" with its earlier position. Second, the court should look closely when the party has succeeded in persuading it to accept the party's earlier position. Third, a court should consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750–51, 121 S.Ct. 1808.

The Eleventh Circuit has repeatedly held that the doctrine of judicial estoppel is applied to the calculated assertion of sworn divergent positions, and is designed to prevent parties from making a mockery of justice by inconsistent pleadings. *See*

*Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir.2001); *American Nat. Bank v. Federal Deposit Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983). Prior to the *New Hampshire* decision, the Eleventh Circuit considered two factors to determine whether judicial estoppel was applicable. First, it required a showing that the inconsistent positions were made under oath in a prior proceeding. Second, the inconsistencies must be shown to have been calculated to make a mockery of the judicial system. *See Harvey*, 260 F.3d at 1308. Since the Supreme Court decision in *New Hampshire*, however, the Eleventh Circuit has somewhat relaxed its test. While holding that the two factors are consistent with the Supreme Court's instructions in *New Hampshire*, the Eleventh Circuit recognized that its test is "not inflexible or exhaustive; rather courts must always give due consideration to all of the circumstances in a particular case when considering the applicability of this doctrine." *Burnes v. Pemco Aeroplex*, 291 F.3d 1282, 1285–86 (11th Cir.2002).

As stated in *Burnes:*

Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (internal citations and quotations omitted). Under this doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." 18 James Wm. Moore et al., Moore's Federal Practice § 134.30, p. 134–62 (3d ed.2000). The purpose of the doctrine, "is to protect the integrity of the judicial process by prohibiting par-

ties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50, 121 S.Ct. at 1814 (internal citations and quotations omitted). This Circuit has explained that, "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions. **The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.**" *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir.1983) (internal citation omitted); *see also Coastal Plains*, 179 F.3d at 205 (explaining that, "[t]he purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.")(internal quotations omitted). In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case. *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir.2001). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.*

Recently, the Supreme Court observed that, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle;" nevertheless, the Court went on to enumerate several factors that inform a court's decision concerning whether to apply the doctrine in a particular case.

*New Hampshire*, 532 U.S. at 750–51, 121 S.Ct. at 1815 (internal citations omitted). Courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. *Id.* **This list is by no means exhaustive, however, because the Court went on to explain that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts."** *Id.* We conclude that the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions referenced above, and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case. **We recognize that these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine.**[12]

*Id.* at 1285 (emphasis added).

While judicial estoppel is intended to apply in the narrowest of circumstances, I conclude that judicial estoppel applies here

---

**12.** In *Birmingham Steel Corporation v. Tennessee Valley Authority*, 353 F.3d 1331 (11th Cir.2003), the Eleventh Circuit considered the application of the judicial estoppel doctrine when a party argued that the other party's attorney took an inconsistent position during

in two respects, namely, to prohibit Exxon from re-litigating appellate issues which were raised or could have been raised in its prior appeal, and, second, to prohibit Exxon from raising in more than 5,000 answers a set-off based on return of consideration for voidable releases. Both aspects satisfy the three-part test.[13]

First, Exxon's present position, as included in its position papers and answers filed with Class counsel and the Special Master, is clearly inconsistent with its prior position before this Court. With regard to the appellate issues, Exxon represented in both its pleadings and oral argument before this Court that it would not file multiple appeals of the issues applicable to the class, and that its appeal from the Rule 54(b) Final Judgment and the interlocutory appeal to the Eleventh Circuit would present all of the issues. On appeal, Exxon either raised such issues or waived them by not raising them. The Eleventh Circuit found no reversible error and affirmed. Now, in its answers and position papers, Exxon reserves to once again appeal, from each final judgment entered for Class claimants, this Court's rulings regarding damages, prejudgment interest, and releases, claiming that any such judgments "must be reversed on appeal." [D.E. # 1841, page 26].[14] Exxon is wrong. There is nothing left to argue about in future appeals, except, perhaps, the calculation of the amount of actual damages and

the proceedings at issue. Without resort to whether the inconsistent position was under oath, the Eleventh Circuit concluded that the two positions were not inconsistent. *Id.* at 1340. "Accordingly, we conclude that class counsel did not mislead the district court as to his position regarding substitution should the court ultimately decertify the class, but instead alerted the court to the position that counsel would take in that event. Therefore, plaintiff is not estopped from arguing that the district court should have a reasonable time for substitution." *Id.* at 1341. In its analysis, the Eleventh Circuit did not specifically address whether the attorney's representation to the court was equivalent to stating a position "under oath" for purposes of meeting its prior requisite criteria to establish judicial estoppel. In *Burnes*, the Eleventh Circuit has since recognized that the requirements are not inflexible or exhaustive. By filing pleadings, and later advocating positions consistent therewith, an attorney makes representations to the court equivalent to an oath for purposes of judicial estoppel. Pursuant to Fed. R.Civ.P. 11(b), "By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written notice, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Accordingly, attorney representations would fall within even the more restrictive prior statement of the test.

13. To allow Exxon to accept the benefit of the Court's ruling in its favor on these issues, and, in the next breath, for Exxon to assert clearly contrary positions, undermines the integrity of the judicial process. Barring Exxon from asserting these matters furthers the principles behind judicial estoppel.

14. In its position papers, Exxon argues: "Exxon also maintains its position that implementation of the District Court's rulings regarding damages and prejudgement interest will result in judgments that must be reversed on appeal for the reasons set forth in Part II of this memorandum."[D.E. # 1841, page 26]. It further argues: "All of the releases other than those that a class member properly elects to treat as void are applicable to release the class members claims because the Eleventh Circuit implicitly has rejected the District Court's ruling that releases that do not refer specifically to the dealer's claim and that contain exceptions for 'trade accounts' and 'reimbursements' do not release the dealers claims."[D.E. # 1843, pages 22–23].

prejudgment interest awarded to a claimant [but not entitlement]. Exxon had its day in court and is not entitled to a "do over." It is judicially estopped from doing so.

Additionally, Exxon represented to this Court that its proposed set-offs would be extremely limited and would not later "surprise" the Court. I frankly was skeptical about invoking discretionary jurisdiction on set-offs at all. As discussed above, Exxon assured this Court and the Plaintiffs that set-offs would be few in number and were limited to such matters as past due fuel charges and the like. Exxon assured that the claims were not complicated and would not raise novel legal issues. Now, Exxon proposes a new release set-off claims in over 5,000 answers. Exxon further assets, and in bad faith, that these claims are "compulsory." [15] Its position is clearly inconsistent with prior representations in several respects.[16] It is directly inconsistent with the number of claimants affected. It does raise novel and complex issues. It is also inconsistent by omission. Exxon knew, or should have known, of this set-off but failed to raise it either pre- or postverdict. I conclude that its omission was intentional. Even if judicial estoppel did not apply, I would exercise my discretion not to allow this new release set-off

claim against the dealers. *See Allapattah Services, Inc. v. Exxon Corporation,* 333 F.3d at 1260 n. 14 ("Thus, the district court had discretion to decide whether Exxon should be allowed to assert set-off claims against the dealers"). I further conclude that the sheer volume of release set-off claims unfairly burdens, delays, and chills the claims administration process.

Second, Exxon had succeeded in persuading this Court to accept its earlier positions (discussed above), so that judicial acceptance of its inconsistent positions in the later proceeding involving the claims administration process creates the impression that this Court was mislead. In my view, Exxon's inconsistent positions makes a mockery of justice by its inconsistent pleadings. It attempts now to mislead the Special Master as well with "double speak." It is necessary to protect the integrity of the judicial process by preventing Exxon from playing fast and loose with the Special Master, this Court and the Eleventh Circuit in order to suit the exigencies of its own self-interest.

Finally, Exxon's inconsistent positions derives an unfair advantage and imposes an unfair detriment on the Class plaintiffs if not estopped. But for Exxon's assurances regarding appeals and set-offs, I would not have established the claims ad-

---

**15.** In *Allapattah,* the Eleventh Circuit affirmed this Court's ruling that any such set-off was permissive. Instead, it applied the rule that counterclaims that may be permitted in a class action are not governed by Rule 13 and are purely discretionary with the court. *Id.* at 1259–60 n. 14.

**16.** In response to Plaintiffs' extensive arguments that allowing Exxon's set-off claims would significantly delay the claims administration process, Exxon assured this Court that this was not so: "Plaintiffs principal strategy in response, however, is to try to intimidate the Court from considering Exxon's counter-

claims by exaggerating both the probable number of such claims and the legal and factual complexity of those claims. **Exxon's counterclaims are straightforward: claims for goods sold and delivered but not paid for or claims for rent that was due and owing. These are not complicated claims; they do not raise novel legal issues. Moreover, Exxon is unlikely to have such claims with regard to a small fraction of the class."** Reply Memorandum of Exxon Corporation Regarding Entitlement to Set Off at 2 (emphasis added).

ministration process as now constituted. It was never my intent to frustrate the ultimate payment of damages, but to allow both parties to have a fair procedure to reach final judgments for class members. Exxon now seeks to take unfair advantage of the claims procedures it championed in a manner inconsistent with its prior representations. By doing so, Exxon's re-litigation of compensatory damage and prejudgment interest, and its new release set-offs, places an undue burden on the 10,000 claimants who are seeking their legitimate redress. Exxon cynically claims that it is raising these issues for their benefit so that the claimants can defend against them in the claims administration process, and thereby protect their rights on multiple future appeals of these issues. Instead, its real purpose is raise the implicit threat of prolonged further litigation, and possible attorney's fees, to dissuade claimants from pursuing their legitimate claims. These additional circumstances warrant the doctrine's application. *See New Hampshire v. Maine*, 121 S.Ct. at 1815 ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts").

## V. THE COURT'S AUTHORITY TO IMPOSE SANCTIONS

The Court has a number of alternative sanctions, or combination of sanctions, at its disposal. First, the Court may strike Exxon's affirmative defenses at issue under Fed.R.Civ.P. 12(f). Rule 12(f), which is a codification of part of the district court's inherent power to manage pending litigation, states, in pertinent part: "[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) authorizes the district court to strike defenses that are insufficient as a matter of law "in order to avoid unnecessary time and money in litigating invalid and spurious issues." *E.g.,Lafayette Corp. Ltd. v. Bank of Boston Int'l South,* 723 F.Supp. 1461, 1466 (S.D.Fla.1989) (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.,* 419 F.Supp. 992, 1000 (M.D.Fla.1976)). Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5C A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990). Nevertheless, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Id.* § 1381 at 665; *see also Waste Management Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir.2001) (affirming district court order granting motion to strike affirmative defenses where defenses were invalid as a matter of law). Here, the affirmative defenses at issue are insufficient as a matter of law, and may be struck, because they all have been finally litigated and resolved against Exxon.

Second, the Court may consider sanctions pursuant to Fed.R.Civ.P.11.[17] Rule 11

---

**17.** Plaintiffs' Emergency Motion to Strike and for Sanctions was expressly pursuant to Fed. R.Civ.P. 12(f), 28 U.S.C. § 1927, and this Court's inherent power to control the integri-ty of the judicial process and the conduct of the parties before it. In a footnote in their Emergency Motion, the Plaintiffs state that Exxon's conduct is also sanctionable under

is triggered here because Exxon, in its position papers before the Special Master, in its answers submitted to Class counsel, and in its memoranda filed with this Court, violated Rule 11(b)(1) and (2).[18] In considering a motion for sanctions pursuant to Fed.R.Civ.P. 11, a court conducts a two-step inquiry: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir.1998); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1105–1106 (11th Cir.2001) (discussing alternative sanctions at length). When filing a pleading in federal court, an attorney "certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and 'is not presented for any improper purpose.'" *Id.* (quoting Fed.R.Civ.P. 11(b)). Thus, if, after dismissing a party's claim as baseless, the court finds that the party's attorney failed to conduct a reasonable inquiry

into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound. *Byrne*, 261 F.3d at 1105; *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir.1995).

Third, as further discussed in *Byrne*, another source of authority for the sanctions that can be levied in this case is 28 U.S.C. § 1927, which states:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As the express language of section 1927 indicates, this sanctioning mechanism is aimed at the unreasonable and vexatious multiplication of proceedings. Unlike Rule 11, which is aimed primarily at pleadings,

---

Rule 11, but asserts that pervasiveness of its attack upon the entire claims administration process, not just the filing of a single improper pleading, warrants sanctions under the court's inherent powers to preserve the integrity of the judicial power [D.E. # 74 at page 29 n. 4]. In their reply, Plaintiffs argue in favor of Rule 11 sanctions, as an alternative, by rejecting Exxon's position that the Court cannot impose Rule 11 sanctions because it did not file answers with the Court. I concur with Plaintiffs that Rule 11 sanctions may be imposed here because it is included as a possible sanction in Plaintiffs' Emergency motion. Accordingly, this is not an instance where Rule 11 sanctions is triggered by this Court's own initiative under Fed.R.Civ.P. 11(C)(1)(B). Furthermore, I agree that Exxon cannot avoid the effect of Rule 11 sanctions by arguing that it has failed to serve its answers. First, Rule 11 is triggered when a pleading, written motion, **or other paper**, is **presented** to the court, whether by signing, filing, submitting or later advocating, such pleading or paper. Here, Exxon's 9,000 answers, which were signed by its counsel, were

presented pursuant to court order by submission to Class counsel. Second, Exxon's position papers filed with the Special Master, advocates what is contained in the answers. Third, Exxon's counsel, at status conferences before the Special Master, and in its pleadings filed with this Court, advocated what was contained in the answers and in the position papers.

**18.** Pursuant to Rule 11(b)(1) and (2), attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the pleading or other paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, and that the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation. Also unlike Rule 11, "awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards." *Byrne*, 261 F.3d at 1106; *United States v. Int'l B'hd of Teamsters, Chauffeurs*, 948 F.2d 1338, 1345 (2d Cir. 1991).

A fourth source of authority for the award of sanctions in this case is the district court's inherent power. This power is derived from the court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133; *Byrne*, 261 F.3d at 1106. Because of its very potency, the inherent power of the court must be exercised with restraint and discretion. *Chambers*, 111 S.Ct. at 2132. A primary aspect of that discretion is that ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Id.* at 2132–2133. One aspect of a court's inherent power is the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 2133.

The Eleventh Circuit has explained that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Byrne*, 261 F.3d at 1106; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998); *See also Mroz*, 65 F.3d at 1575 ("Invocation of a court's inherent power requires a finding of bad faith."). Bad faith exists when the court finds that a fraud has been practiced upon it, or "that the very temple of justice has been defiled," *Chambers*, 111 S.Ct. at 2133, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order. *Id.; see also, Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir.1993). A finding of bad faith is warranted where an attorney-knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998) (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997)). In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case". *See Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir.1984).

Invocation of the inherent power serves the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 111 S.Ct. at 2133. The district court should be cautious in exerting its inherent power and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* at 2132.

■ Sanctions authorized under the court's inherent powers include the striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorney's fees, and outright dismissal of a lawsuit. *E.g., Chambers*, 501 U.S. at 43–45, 111 S.Ct. 2123; *Martin*

*v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332 (11th Cir.2002) (dismissing with prejudice); *Malautea,* 987 F.2d 1536 (1993) (striking answers and entering default judgment); *State Exchange Bank v. Hartline,* 693 F.2d 1350, 1352 (11th Cir.1982) (striking pleadings); *Telectron v. Overhead Door Corp.,* 116 F.R.D. 107 (S.D.Fla.1987) (Marcus, J.) (entering default judgment against defendant); *see also Pelletier v. Zweifel,* 987 F.2d 716, 718 (11th Cir.1993) (entering Rule 11 sanctions for parties' frivolous violation of mandate rule).

## VI. EXXON HAS ENGAGED IN BAD FAITH

■ For reasons discussed above, I conclude that Exxon has engaged in bad faith in several important respects. First, Exxon has knowingly and recklessly included frivolous and bad faith defenses in almost 9,000 answers filed with Class counsel (and in its Exemplars filed with the Special Master) that have already been decided against Exxon by this Court and affirmed on appeal by the Eleventh Circuit. This includes Exxon's assertion in **every claim** that it did not overcharge the claimant; that the damage methodology included in this Court's order is wrong, and was not affirmed on appeal, and that each claimant must individually prove that Exxon overcharged the dealer and the amount of the individual overcharge; that damages are not liquidated and that no claimant is entitled to prejudgment interest despite the Eleventh Circuit's affirmance of this Court's finding of entitlement to prejudgment interest, and that over 5,000 claims are barred by a valid release or a voidable release.

Second, Exxon includes allegations in every claim that the good faith amount is less than $50,000 even where it has reason to believe, based on its own records, that a significant number of claims are in excess of $50,000.00.

Third, Exxon is intentionally attempting to delay or disrupt the claims administration process by re-raising these affirmative defenses for purpose of "further appeal" in direct contradiction to its prior positions and representations before this Court which I relied upon in formulating the class administration process.

Fourth, Exxon is attempting to disrupt the claims administration process by raising a release set-off claim in over 5,000 answers when it previously represented that its set-off claims would be few in number and limited in scope.

Fifth, Exxon's motive is to chill the claims administration process by creating the false appearance that each claimant's claim is invalid or deficient, and that pursuing the claim will enmesh the claimant in a difficult and protracted legal dispute with the outcome in question. It does this by its assertion of factually questionable frivolous denials, defenses and demands for attorney's fees and costs, and the confusing manner in which the answers are constructed. Out of the 9,000 answers, it does not admit that it owes one dollar to one claimant, notwithstanding thirteen years of litigation. Its purpose is utter harassment of 9,000 opponents and to hamper the enforcement of this Court's prior orders.

Exxon argues that its "good will" is proven by its cooperation before the Special Master in attempting to expedite the process. Its argument is a sham, and its litigation strategy is transparent. While it, on one hand, it offers to move the process forward, it, on the other hand, lays

the ground work to improperly delay the just payment of claims by re-litigating its frivolous defenses on appeal to make use of its money at a higher internal rate of return.[19]

## VII. IMPOSITION OF APPROPRIATE SANCTIONS

I strictly adhere to the requirement that inherent powers must be exercised with restraint and discretion, while recognizing that a primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. I also adhere to the principle that when bad faith conduct could be adequately sanctioned under the rules, the court ordinarily should rely on the rules and not on its inherent power. Following these dictates, I conclude that a combination of sanctions is warranted in progressive sequence under Rule 12(f), Rule 11, and pursuant to this Court's inherent powers.

■ First, I grant the Plaintiffs' motion under Fed.R.Civ.P. 12(f) to strike the affirmative defenses that I have found deficient as a matter of law, for the reasons set forth in this Order. I also strike the release set-off on the alternative grounds that: (1) it is barred as a matter of law in the vast majority of releases, (2) Exxon is judicially estopped from raising it, and (3) because, in my discretion, I elect not to allow it as a permissive counterclaim in these proceedings.[20]

■ Second, I award attorney's fees to Plaintiffs against Exxon under Rule 11 for having to defend against the affirmative defenses and the release set-off before the Special Master and before this Court. I conclude that Exxon and its attorneys knew, or should have known, that assertion of these affirmative defenses were legally and factually frivolous given Exxon's prior representations and the affirmance by the Eleventh Circuit. Rule 11 sanctions are warranted because of Exxon's scheme to deliberately misuse the judicial process to chill the Class Dealers' legitimate claims. *See Worldwide Primates, Inc. v. McGreal,* 26 F.3d 1089, 1093 (11th Cir.1994) (remanding the case to impose an appropriate sanction because the client pursued the claim "when it knew, or should have known, that its claim was legally and factually baseless"); *Byrne v. Nezhat,* 261 F.3d 1075, 1117 (11th Cir.2001). Typically, Rule 11 does not permit sanctioning a client when the basis for the sanction is that the pleading was strictly legally frivolous. *Id.* at 1117.[21] Here, the affirmative defenses are both factually and legally frivolous.

19. Plaintiffs counsel persuasively argues that Exxon's bad faith conduct is in its own self-interest in order to delay payment of the money its owes the dealers. As stated by counsel: "This is because, notwithstanding the continued running of prejudgment interest, Exxon publically reported internal rate of return on its funds is more than double the average state law prejudgment interest rate .... Exxon can continue to 'earn' as much as an additional $100 million per year on the dealers' money by not timely paying the claims that are due." Plaintiffs' Emergency Motion [D.E. # 1874, page 32 n. 4].

20. I had previously ruled that the plain meaning of the terms "trade accounts" and "reimbursement," which appear in the vast majority of the Releases, unambiguously, and, as a matter of law, except Plaintiffs' claims from the Releases. *Allapattah Services, Inc.,* 188 F.R.D. at 680 n. 24.

21. Although typically levied against an attorney, a court is authorized to issue Rule 11 sanctions against a party even though the party is neither an attorney nor the signor of the pleadings. *Byrne v. Nezhat,* 261 F.3d 1075, 1105 (11th Cir.2001). *See also Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1508 n.

But, even if the affirmative defenses were only legally frivolous, a client is still subject to sanctions when it is clear that it is the "mastermind" behind the frivolous case. *Id.* In this case, Exxon's in-house counsel, Robert Wallis, has been an active participant in each phase of the litigation, including before the Special Master. Without doubt, Exxon's improper and frivolous scheme would not have proceeded without his full knowledge, direction, and consent. It is telling that Exxon hired new counsel, no doubt under Mr. Wallis' direction, to litigate the scheme. Under the circumstances, punishing retained counsel, instead of Exxon, would not address Mr. Wallis' knowing participation.[22]

█ Third, I invoke my inherent power to fashion an appropriate remedy which transcends the filing of the papers at issue, but is directed to Exxon's bad faith litigation scheme. I do so in two respects.[23] First, I will require the Special Master to make a finding in each forthcoming claims hearing as to whether Exxon has defended against the claim in bad faith based on the totality of the circumstances. In the event Exxon continues to knowingly and recklessly pursue frivolous denials and affirmative defense for the purpose of delay, or to further chill the process by imposing sub-

stantial attorney's fees and costs on claimants, then Exxon will be required to pay those attorney's fees and costs. *See Chambers v. NASCO,* 501 U.S. at 44–46, 111 S.Ct. 2123 (As an exception to the American Rule, the district court may award attorneys' fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons").[24] Any such finding shall be subject to further review by this Court, and, where appropriate, will be included in the final judgment of the respective claimant. To the extent attorney's fees are already authorized by state law, the Special Master shall recommend an alternative sanction. To reiterate, my ruling does not impose or require attorney's fees in each claims proceedings at this time, but establishes a process, consistent with due process, where, after further fact-finding, the matter will be further considered.

█ Second, in the event that Exxon files an appeal from a final judgment in favor of a class member on grounds already resolved through the prior appeals process—including particularly entitlement to and the method of calculating compensatory damages and prejudgment interest, and the inefficacy of Exxon's releases—the judgment of that member of the Class will

14 (11th Cir.1993) (" 'Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client.' " (quoting Fed.R.Civ.P. 11 advisory committee's note)).

**22.** In the alternative, I would impose attorney's fees against Exxon under my inherent powers. The analysis in this Order concerning the appropriate proportionality of this sanction for Exxon's conduct applies equally if the sanctions are imposed pursuant to my inherent powers.

**23.** The Plaintiffs urge that I enter default judgment against Exxon on each claimant's

claim in the amount determined by the Special Master. I decline to do so at this time. I have permitted Exxon to participate in the claims administration process. To enter default judgments would deprive Exxon of the opportunity to defend against unsubstantiated claims.

**24.** The bad faith attorney's fee exception to the American Rule is not limited to conduct at the moment of filing, but also incorporates bad faith acts during litigation. *Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1543 (11th Cir.1985).

earn post-judgment interest at a rate equal to Exxon's quarterly reported earnings on its capital, unless the Eleventh Circuit concludes otherwise based on the merit of the appellate issues raised.[25] A sanction computed in this manner will eliminate Exxon's ability to earn money on the money it wrongly retains as a result of its bad faith scheme. The purpose and goal of the scheme is obvious and unambiguous. The average state law prejudgment interest is approximately 8%, and the current post-judgment federal rate is 3%, each a small fraction of Exxon's internal rate of return on its capital, which in 2004, was 23.8%. Assuming Exxon owes one billion dollars to the class members who have filed claims, at its internal rate of return on capital, Exxon can enjoy an annual return of $238 million dollars on this money—for as long as it keeps it. By advancing defenses already lost, and then appealing their denial, Exxon can punish the innocent dealers who are entitled to their legitimate damages, simply because it can afford to do so.[26]

## VIII. RESOLUTION OF REMAINING ISSUES IN THE CLAIMS ADMINISTRATION PROCESS

The parties have filed a number of motions with the Special Master which require resolution. Some of these matters were discussed in their position papers and others were filed as separate motions. To assist the Special Master, the parties have filed a "Consolidated Response Regarding Claims Adjudication Procedures" which enumerates sixteen action points. The Special Master is directed to decide all outstanding issues in a manner not inconsistent with this Order. Exxon shall continue to be permitted to participate in the claims administration process in the manner set forth in *Allapattah Services, Inc. v. Exxon Corp.*, 157 F.Supp.2d 1291, 1324 (S.D.Fla.2001).

**WHEREFORE**, it is **ORDERED**:

1. Plaintiffs' Emergency Motion to Strike Exxon's Answers and Affirmative Defenses to Class Members Claims, for Entry of Default Judgment and for Further Sanctions Against Exxon Corporation and its Attorneys is **granted in part** and **denied in part**. Pursuant to this Order, the following affirmative defenses are stricken from Exxon's answers to claims: (1) "[E]xxon did not overcharge the claimant for motor fuel during the period from March 1, 1983, through August 28, 1994"; (2) "[A]n award of damages to the claimant based in whole or in part on multiplying the number of gallons of motor fuel purchased by a dealer from Exxon by the

---

**25.** Independent of Exxon's frivolous reservation of appellate claims, it may raise legitimate appellate issues based on the circumstances of the particular claim, such as the amount of prejudgment interest to be awarded under my prior rulings. It is not my intent to chill Exxon's legitimate appellate rights, but to allow the Eleventh Circuit to decide if there is a legitimate basis for the appeal that would avoid the sanction.

**26.** By analogy, in enforcement actions under federal statutes, the United States Supreme Court has recognized the equitable power of the courts to order "disgorgement" as a remedy for the purpose of depriving the wrongdoer of his ill-gotten gains and deterring violations of the law. *See State of Kansas v. State of Colorado*, 1997 WL 33796878 (1997)(citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 405, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) and *Mitchell v. Robert DeMario Jewelry*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960)). The *Porter* case also was discussed by the Eleventh Circuit in *Federal Trade Commission v. Gem Merchandising Corporation*, 87 F.3d 466, 469 (11th Cir.1996) ("Among the equitable powers of a court is the power to grant restitution and disgorgement").

cents per gallon that the jury found Exxon should have reduced on average the wholesale price of a gallon of motor fuel would deny Exxon due process of law because that calculation does not reflect either the amount that Exxon overcharged a dealer or the damages that the claimant is entitled to recover. Each claimant must prove the amount, if any, that Exxon actually overcharged the dealer through which the claimant is claiming and the amount that the dealer was damaged by that overcharge;" (3) "[T]he damages claimed were not liquidated as of a date certain prior to entry of the judgment and therefore the claimant is not entitled to prejudgment interest," [27] and (4) "[T]he claim is barred by a valid release." [28]

In addition, Exxon's affirmative defense on the pending United States Supreme Court review [29] is stricken with leave to amend each answer to state that Exxon preserves its position in the claims administration process pending a final ruling from the United States Supreme Court.

Finally, Exxon's release set-off claim for return of consideration paid for release is stricken in each answer. The Court revokes its discretionary jurisdiction to allow Exxon to assert the release set-off, but retains jurisdiction to hear set-offs on debts allegedly owed to Exxon. The Court denies Plaintiffs' request that default judgment be entered, and also denies Plaintiffs' request that Exxon's counsel be required to forfeit and disgorge any fees paid in connection with the filing of Exxon's frivolous pleadings. In lieu, the Court grants sanctions in the manner directed in this Order. Plaintiffs' counsel shall file with the Special Master a proposed affidavit on fees and costs within 20 days from the date of this Order. The Special Master shall make a recommendation on the amount of fees and costs to be awarded.

2. Exxon shall amend each answer within 20 days from the Court's oral ruling on April 29, 2005, consistent with this Order.

3. The Court reserves to the Plaintiffs a right to request by motion or discovery further detailed information on each of the remaining affirmative defenses set forth in Exxon's "Notice of Filing Exemplar of Defenses" [D.E. # 1892], as supplemented by Plaintiffs Notice of Filing Supplemental List of Defenses and Examples of Answers [D.E. # 1916]. The Special Master may

---

**27.** Exxon my only challenge the amount awarded as prejudgment interest, but not entitlement, consistent with my orders at D.E. # s 1722 and 1762.

**28.** I do not strike the affirmative defense that "[T]he claim is barred by a valid Delaware release." I reserve to the Special Master to hear further arguments on the affirmative defense that "[T]he claim is barred because the [dealer/claimant] released the claim in *Hilo v. Exxon Corp.*, Case No. CV92–4408–RSWL, in the United States District Court for the Central District of California." Exxon states that it raised the defense of release in its answer [D.E. # 378, at 21 Fourth Affirmative Defense]. Neither party addressed this affirmative defense prior to trial.

**29.** The affirmative defense states: "[I]n Case No. 04–70, the United States Supreme Court is reviewing the Eleventh Circuit's decision in *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir.2003), *review granted*, —— U.S. ——, 125 S.Ct. 317, —— L.Ed.2d —— (2004). In the event the Supreme Court reverses that decision, it also must vacate the class certification and the jury verdict upon which the claim is based." This affirmative defense, as currently stated, is misleading. Exxon has requested that class certification and the jury verdict must be vacated. This result is not mandated, even if the Supreme Court disallows putative class members from being class members if the good faith jurisdictional amount is less than $50,000.00.

1379

consider any further motions filed by Plaintiffs to strike any of these remaining affirmative defenses.

4. With regard to the remaining set-off on debts owed to Exxon, the Special Master is directed to recommend whether to establish a procedure for summary judgment for resolution of the set-off claimed based on statute of limitations or other grounds.

5. Sanctions are imposed as set forth in this Order.

6. This Order shall be referenced in each Final Judgment so that it may be subject to appeal. No request for interlocutory appeal will be accepted. No motion for rehearing may be filed.